Jeremy Jong
Karlyn Kurichety
AL OTRO LADO, INC.
P.O. Box 907
Maywood, CA 90270
Tel: (323) 205-6420
Fax: (323) 430-8793
jeremy@alotrolado.org
karlyn@alotrolado.org

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| AL OTRO LADO<br>P.O. Box 907<br>Maywood, CA 90270<br><br>*Plaintiff*<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br>500 12th St., SW<br>Washington, DC 20536<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>2707 Martin Luther King Jr Ave SE 5<br>Washington, DC 20528-0525<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY | Case No..:<br>2:21-cv-03462-CAS-MAA<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Hon. Christina A. Snyder<br>United States District Judge |

OFFICE FOR CIVIL RIGHTS AND CIVIL
LIBERTIES
2707 Martin Luther King, Jr. Avenue, SE
Mail Stop #0190
Washington, DC 20528-0190

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES
111 Massachusetts Ave NW
Washington, DC 20001

*Defendants*

1.      Plaintiff Al Otro Lado brings this action under the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and
2202. Al Otro Lado seeks records from Defendant U.S. Immigration and Customs
Enforcement ("ICE") relating to immigrants abused and neglected in ICE detention
centers in the American southeast. Specifically, Al Otro Lado has request records
regarding the circumstances surrounding the deaths of Roylan Hernandez Diaz and
Anthony Jones at Richwood Correctional Center ("RCC") and Anthony Jones at Adams
County Detention Center ("ACDC"), ICE assaults of detained asylum seekers in at
ACDC and Winn Correctional Center ("WCC"), the retaliation against detained
immigrant whistleblowers at Irwin County Detention Center ("ICDC"), and Etowah
County Detention Center ("ECDC"), and the detention of immigrants in unsafe and
unsanitary conditions amid severe winter storms in Louisiana.

2.      These records are important to inform the general public in understanding how the U.S. government treats people in its custody and aiding public debate over the extent to which funding ICE detention is a good use of the government's tax revenues.[1]

3.      The public would also benefit from information about operations of the New Orleans and Atlanta ICE Field Offices, which oversee the above detention centers, which are partially run by private prison companies CoreCivic, GEO Group, and Lasalle Corrections. Detention centers within those Field Offices' areas of responsibility have a reputation for brutality.[2] As such, records relating to ICE's handling of abuse and death cases at these detention centers would aid the public in determining whether ICE is exercising proper oversight authority over its contractors and whether the government should contract with private prison contractors at all.[3]

---

[1] *See e.g. Chairwoman Roybal-Allard Statement at Hearing on FY 2021 ICE Budget Request,* Mar. 11, 2020, House Committee on Appropriations,
https://appropriations.house.gov/news/statements/chairwoman-roybal-allard-statement-at-hearing-on-fy-2021-ice-budget-request; Julian Resendiz, *Activists want Biden to defund ICE, overhaul migrant detention policies*, Border Report, Jan. 22, 2021;
https://www.borderreport.com/hot-topics/immigration/activists-want-biden-to-defund-ice-overhaul-migrant-detention-policies/; Dara Lind, *"Abolish ICE," explained*, Vox, Jun. 28, 2018,
https://www.vox.com/policy-and-politics/2018/3/19/17116980/ice-abolish-immigration-arrest-deport;
[2] *See e.g.* Senators Elizabeth Warren, Cory A. Booker et. al, *Letter to ICE and DHS re Forced Deportations of Asylum Seekers,* Feb. 25, 2021,
https://www.warren.senate.gov/download/20210225-letter-to-ice-and-dhs-re-forced-deportations-of-asylum-seekers; *IMPRISONED JUSTICE: Inside Two Georgia Immigrant Detention Centers,* Project South and Penn State Law, May 2017, https://projectsouth.org/wp-content/uploads/2017/06/Imprisoned_Justice_Report-1.pdf.
[3] *See e.g. The Accreditation Con: A Broken Prison and Detention Facility Accreditation System That Puts Profits Over People*, The Office of Senator Elizabeth Warren, Dec. 14, 2020,
https://www.warren.senate.gov/imo/media/doc/The%20Accreditation%20Con%20-%20December%202020.pdf;
Tom O'Connor and Naveed Jamali, *Under Pressure on Immigration, Biden Gives ICE A Pass on Private Prison Ban,* Newsweek, Feb. 19, 2021;
https://www.newsweek.com/under-pressure-immigration-biden-gives-ice-pass-private-prison-ban-1570652; Noah

4.      ICE has not issued determination in any of the ten FOIA requests Al Otro Lado filed seeking records as requested by FOIA and has a pattern and practice of failing to comply with FOIA's statutory deadlines.

5.      Due to ICE's delays, Al Otro Lado seeks declaratory relief and injunctive relief ordering ICE to issue timely determinations in Al Otro Lado's current FOIA requests and comply with FOIA's timelines in the future.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction and personal jurisdiction under 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i) as well as 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff resides in and has its principal place of business here.

7.      Plaintiff has exhausted any and all administrative remedies in connection with its FOIA requests, as detailed below.

## PARTIES

8.      Plaintiff Al Otro Lado is a non-profit, non-partisan organization based primarily in Los Angeles, California. Al Otro Lado is a legal services organization

---

Lanard, *Biden Pledged to Close For-Profit ICE Detention Centers. Will He Follow Through?*, Mother Jones, Jan. 27, 2021.

serving indigent deportees, migrants, refugees, and their families. Al Otro Lado's mission is to coordinate and to provide screening, advocacy and legal representation for individuals in immigration proceedings and detained by DHS, to seek redress for civil rights violations, and to provide assistance with other legal and social service needs. Al Otro Lado regularly provides information and analysis to the media, the general public, and human rights monitoring bodies and disseminates information about its work and conditions on the U.S.-Mexico border and in immigration detention through its various social media accounts and website.[4] Disseminating information to the public is a critical component of Al Otro Lado's work. Al Otro Lado does this at no cost to the public.

9.     Defendant ICE is an agency within the meaning of 5 U.S.C. § 552(1)(f). ICE has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

## FACTUAL BACKGROUND

10.     On October 8, 2019, jail guards employed by private prison company Lasalle Corrections found Roylan Hernandez Diaz dead in his solitary confinement cell at RCC in Richwood, Louisiana. Despite knowledge of his ongoing mental health issues, Lasalle and ICE staff placed Mr. Hernandez Diaz in a cell alone with little access to the outside world for the six days preceding his death.[5] Lasalle staff's failures to perform

---

[4] *See e.g.* https://twitter.com/AlOtroLado_Org; https://www.instagram.com/alotrolado_org/?hl=en; https://www.facebook.com/AlOtroLadoOrg/;  https://alotrolado.org/.
[5] Nomaan Merchant, *The preventable death of an asylum seeker in a solitary cell*, Associated Press, Mar. 9, 2020,

safety checks on Mr. Hernandez Dias as required by ICE's Performance Based National Detention Standards also contributed to his death. Mr. Hernandez Diaz' death was one of 24 deaths in adult ICE detention since the beginning of 2020.[6]

11.    On March 20, 2020, two detained immigrants at ECDC in Gadsden, Alabama tied nooses around their necks in protest of ICE's plan to increase the population of their already crowded unit during the early days of the COVID-19 pandemic.[7] A recording of the protest was uploaded to the internet. After the video went viral and received press coverage, ECDC sent one of those immigrants to solitary confinement in response to his request for a COVID-19 test.

12.    On April 21, 2020, ICDC guards attacked a detained immigrant in retaliation for speaking in a video exposing the lack of COVID-19 precautions being taken by ICE and facility staff.[8] The guards threw her into a table and then forced her into a segregation cell where they kept her without access to the outside world for two weeks.

---

https://apnews.com/article/immigration-us-news-ap-top-news-cuba-asylum-seekers-618df9aa77288cab0cc987bd75966e17

[6] *Deaths at Adult Detention Centers*, American Immigration Lawyers Association, updated Aug. 3, 2021, https://www.aila.org/infonet/deaths-at-adult-detention-centers.

[7] Ryan Devereaux, *"Burials are Cheaper Than Deportations": Virus Unleashes Terror in a Troubled ICE Detention Center,* The Intercept, Apr. 12, 2020, https://theintercept.com/2020/04/12/coronavirus-ice-detention-jail-alabama/

[8] Debbie Nathan, *Women in ICE Detention Face Reprisals for Speaking up About Fears of COVID-19*, The Intercept, Apr. 28, 2020, https://theintercept.com/2020/04/28/ice-detention-coronavirus-videos/.

13.     On October 7, 2020, ACDC ICE officers attacked, pepper sprayed, and choked eight Cameroonian asylum seekers in Natchez, Mississippi.[9]

14.     On December 17, 2020, Anthony Jones died in ICE custody at ACDC.[10] Despite ICE's knowledge of Mr. Jones' hypertension and multiple COVID-19 outbreaks at ACDC, they kept him detained.[11] That morning, Mr. Jones requested to go to the medical unit, but a guard told him to wait until they finished counting everyone in the unit. Approximately an hour later, Mr. Jones told an ACDC nurse that he had chest pains and burning in his arms. ACDC refused to send him to a hospital or engage in necessary emergency lifesaving procedure and Mr. Jones died of cardiac arrest shortly thereafter.

15.     On January 14, 2021, six ICE officers attacked at least two Cameroonian asylum seekers at WCC. These officers tripped the two asylum seekers to the ground, grabbed them by their necks, and forcibly fingerprinted them.

16.     In February of 2021, severe winter storms in Louisiana and Texas caused power outages and water interruptions that left detained people in the freezing cold

---

[9] Bobbi-Jeanne Misick, *Cameroonian Immigrants Say They Were Beaten, Pepper-sprayed, Forced To Sign Deportation Documents*, WWNO Public Radio, Nov. 26, 2020, https://www.wwno.org/latest-news/2020-11-26/cameroonian-immigrants-say-they-were-beaten-pepper-sprayed-forced-to-sign-deportation-documents
[10] *Detainee Death Report: JONES*, Anthony, Immigration and Customs Enforcement, updated Feb. 11, 2021, https://www.ice.gov/doclib/foia/reports/ddrAnthonyJones.pdf.
[11] *ICE Detainee Statistics*, Immigration and Customs Enforcement, updated Mar. 1, 2021, https://www.ice.gov/coronavirus

without flushable toilets.[12] These conditions were caused by ICE's failures to properly plan and prepare for these storms.

17.    These human rights violations are part of a pattern of abuse and negligence against detained immigrants by ICE in general and the New Orleans and Atlanta ICE Field Offices and their private prison contractors in particular.[13] It is of vital importance that the public understand ICE's role in and responses to human rights abuses in their detention centers.

## THE REQUESTS

18.    On February 1, 2021, ICE received the following FOIA request from Al Otro Lado:

---

[12] Alleen Brown, *"Dying Of Cold": ICE Detainees Freezing in Southern Prisons*, The Intercept, Feb. 19, 2021 https://theintercept.com/2021/02/19/ice-detention-cold-freezing-texas-louisiana/.

[13] Senators Elizabeth Warren, Cory A. Booker et. al, *Letter to ICE and DHS re Forced Deportations of Asylum Seekers*, Feb. 25, 2021, https://www.warren.senate.gov/download/20210225-letter-to-ice-and-dhs-re-forced-deportations-of-asylum-seekers; *See e.g. The Trump Administration's Mistreatment of Detained Immigrants: Deaths and Deficient Medical Care by For-Profit Detention Contractors*,Committee on Oversight and Reform and Subcommittee on Civil Rights and Civil Liberties-U.S. House of Representatives, Sep. 2020, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-09-24.%20Staff%20Report%20on%20ICE%20Contractors.pdf; Terp S, Ahmed S, Burner E, et al. *Deaths in Immigration and Customs Enforcement (ICE) detention: FY2018-2020. AIMS Public Health.* 2021;8(1):81-89. Published 2021 Jan 11. doi:10.3934/publichealth.2021006; Ryan Devereaux, *ICE Detainee Who Died of COVID-19 Suffered Horrifying Neglect*, The Intercept, May 24, 2020, https://www.nbcnews.com/politics/immigration/24-immigrants-have-died-ice-custody-during-trump-administration-n1015291; Alissa Zhu, *'Treated like hell': Mississippi ICE detainees say they don't get enough food, medical care*, Mississippi Clarion Ledger, Dec. 20, 2019, https://www.clarionledger.com/story/news/local/2019/12/20/mississippi-ice-detainees-say-they-dont-get-enough-food-medical-care/2618866001/; *Detainees allege abuse, torture at Mississippi ICE detention center*, Mississippi Clarion Ledger, Nov. 16, 2020, https://www.clarionledger.com/story/news/2020/11/17/detainees-allege-abuse-torture-mississippi-ice-detention-center/6174998002/

1. All Mortality Reviews created by the Immigrant Health Services Corps ("IHSC") regarding the death of Anthony Jones aka Henry Missick (https://www.ice.gov/news/releases/bahamian-man-ice-custody-passes-away-mississippi) . These reviews may be found in the Medical Quality Management Unit ("MQMU") Sharepoint Folder as described by, e.g., Section F.1.B (page 7) of IHSC's Mortality Review Policy: https://www.documentcloud.org/documents/6025551-IHSC-Operations-Memorandum-Mortality-Review.html.

2. All records relied upon to create the above mortality review

3. Any communications or regarding this event between IHSC and CoreCivic and between IHSC and any people employed at Adams County Detention Center ("ACDC").

4. Any Root Cause Analysis created by the IHSC for any Sentinel Event occurring at ACDC between January 1, 2019 to Present.

19.     On February 2, 2021, ICE assigned number 2021-ICFO-24148 to the request and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). However, though ICE changed the status to "closed," Al Otro Lado has yet to receive a written determination regarding the request, which has now been pending for 160 business days.

20.     On February 1, 2021, ICE received the following FOIA request from Al Otro Lado:

1. Any communications containing the keywords "Anthony Jones" between the ICE Office of Congressional Relations and the following:
   a. Senate Judiciary Committee
   b. House Judiciary Committee
   c. Senate Judiciary Committee, Subcommittee on Immigration, Refugees/ and Border Security

9

   d. House Judiciary Committee, Subcommittee on Immigration,
      Citizenship, Refugees, Border Security and International
      Law,
   e. Senate Homeland Security and Governmental Affairs
      Committee
   f. House Homeland Security Committee
   g. Senate Appropriations Committee
   h. House Appropriations Committee
   i. The offices of Representative Michael Guest and Senators
      Roger Wicker and Cindy Hyde-Smith

2. Any investigation reports conducted by the ICE's Office of
   Professional Responsibility and all documents related to
   investigation of the death of Anthony Jones.
   Any electronic communications including but not limited to
   e-mails, text messages, and instant messages on any platform, to
   and from New Orleans Field Office Director Dianne Witte
   containing the words "Anthony Jones." Her email address is
   diane.l.witte@ice.dhs.gov. The time range for this search should be
   from December 16, 2020 to the date the officer engages in this
   search.

3. Any electronic communications including but not limited to
   e-mails, text messages, and instant messages on any platform, to
   and from New Orleans Assistant Field Office Director Robert
   Hagan containing the words "Anthony Jones." His email address is
   Robert.G.Hagan@ice.dhs.gov and his cell phone number is
   318-485-1236. The time range for this search should be from
   December 16, 2020 to the date the officer engages in this search.

21.    On February 2, 2021, ICE assigned number 2021-ICFO-24150 to the request

and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). However, ICE has

yet to issue a determination regarding the request, which has now been pending for 160

business days.

22.     On February 1, 2021, ICE received the following FOIA request from Al

Otro Lado:

> 1.  Please provide all reports, memoranda, or audits created or
>     received on or after January 1, 2019, by the ICE Detention
>     Standards Compliance Unit for Adams County Detention Center
>     ("ACDC").
>
> 2.  Separately, please provide any communications occurring on or
>     after January 1, 2019, between ICE's Detention Standards
>     Compliance Unit and CoreCivic or any of its subcontractors
>     regarding compliance or non-compliance with ICE's
>     Performance-Based National Detention Standards.
> 3.  All Significant Incident Reports ("SIR") and any associated
>     records relating to ACDC or immigrants detained therein between
>     January 1, 2019 and the present. ICE's SIR policy is detailed here:
>     https://www.dhs.gov/sites/default/files/publications/privacy_pia_2
>     3_ice_sen.pdf
>
> 4.  All documents pertaining to Detainee Reporting and Information
>     Line calls made from ACDC between January 1, 2020 and the
>     present. Information about the reporting line can be found here:
>     https://www.ice.gov/contact/detention-information-line#:~:text=Th
>     e%20ICE%20ERO%20Detention%20Reporting,%2D888%2D351
>     %2D4024.
>
> 5.  All records concerning the names, number, and qualifications of
>     any and all full-time, part-time and contracted medical staff
>     employed or contracted to work at ACDC in November and
>     December of 2020.

23.     On February 2, 2021, ICE assigned number 2021-ICFO-24149 to the request

and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). However, ICE has

yet to issue a determination regarding this request, which has now been pending for 160 business days.

24.    On February 2, 2021, ICE received the following FOIA request from Al Otro Lado:

1. Any and all records including relating to use of force by employees of ICE on immigrant detainees at Winn Correctional Center on January 14, 2021.

2. Any reports or documents regarding use of force at Winn Correctional Center on January 14, 2021, including but not limited to
   a. All Significant Incident Reports ("SIR")
   b. All reports, memoranda, and incident reports sent to the New Orleans ICE Field Office Director pursuant to any relevant ICE national detention standard.
   c. All audiovisual recordings sent from the to the New Orleans ICE Field Office Director pursuant to any relevant ICE national detention standard.

3. Any communication sent to or from the New Orleans ICE Field Office regarding any use of force incident at Winn Correctional Center on January 14, 2021. This search should contain, but should not be limited to, a keyword search or emails and instant messages for following the following terms "Winn" and "use of force" between January 14, 2021 and the present. A search should also be done for any communications between the New Orleans ICE Field Office and the ICE Office of Professional Responsibility, the Department of Homeland Security, Office of the Inspector General and the Federal Bureau of Investigation regarding any use of force incident on January 14, 2021.

4. All video, audio, or audiovisual recordings of the kitchen at Winn Correctional Center on January 14, 2021 between 11:00am and 4:00pm .

5.  Documents identifying the persons present in kitchen at Winn Correctional Center on January 14, 2021 between 11:00am and 4:00pm .

6.  Documents identifying the persons present in the medical unit of Winn Correctional Center on January 14, 2021 between 11:00am and 4:00pm .

7.  Any contracts or agreements between any local government and United States government and its agencies relating to the operation of Winn Correctional Center.

25.   On February 9, 2021, ICE assigned number 2021-ICFO-24506 to the request and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). However, ICE has yet to issue a determination regarding this request, which has now been pending for 159 business days.

26.   On July 27, 2021, ICE stated through counse, that production on the four above requests would begin "about the second week of August." ECF No. 33 at 6. On August 30, ICE stated it expects "the production of documents to be completed by September 2021." ECF No. 38 at 6.

27.   Al Otro Lado has not received any productions from the four above requests.

28.   The original complaint in this case also sought relief regarding FOIA requests sent to the Defendants Department of Homeland Security, the Department of Homeland Security Office for Civil Rights and Civil Liberties, and United States

Citizenship and Immigration Services, but Plaintiff no longer seeks relief on those claims

as they have been resolved.

29.     On March 9, 2021 ICE received the following FOIA request from Al Otro

Lado:

> 1)  Chapter 1.1, Section (V)(8)(h) of ICE's 2016 revision of its
>     Performance Based National Detention Standards requires
>     detention facilities to "ensure generators are functioning properly
>     and have an adequate supply of fuel for a protracted situation." in
>     the event of an adverse weather emergency. Please send all
>     records, including but not limited to communications and written
>     policies, relating to the
>         a)functioning of any generators
>         b)availability of fuel, or
>         c) power outages
>      at any detention facility in the Area of Responsibility of the
>      New Orleans ICE Field Office (Louisiana, Mississippi, and
>      Alabama) dated, sent, or received between February 8, 2021 and
>      February 19, 2021.
>
> 2)  ICE's pandemic response requirements require that "Transfers of
>     ICE detainees and non-ICE detained populations to and from other
>     jurisdictions and facilities are discontinued unless necessary for
>     medical evaluation, medical isolation/quarantine, clinical care,
>     extenuating security concerns, release or removal, or to prevent
>     overcrowding. Detainee transfers for any other reason require
>     justification and pre-approval from the local ERO Field Office
>     Director. Detainee transfers must have cleared quarantine protocols
>     and be cleared by ICE Health Services Corps. Detainee transfers
>     for any other reason require pre-approval from the local ERO Field
>     Office Director." Please send all communications sent or received
>     between February 8, 2021 and February 19, 2021 to and from the
>     Immigration Health Services Corps and the Field Office Director,
>     Deputy Field Office Directors, and Assistant Field Office Directors
>     in the New Orleans Field Office regarding transfers to and from

14

any detention facilities within the New Orleans ICE Field Office Area of Responsibility.

2) Please send all communications to and from the Field Office Director, Deputy Field Office Directors, and Assistant Field Office Directors in the New Orleans ICE Field Office sent or received between February 8, 2021 and February 19, 2021 containing the keywords "water" and one or more of the following terms:
    a) Adams
    b) ACDC
    c) Etowah
    d) ECDC
    e) Allen Parish
    f) Richwood
    g) RCC
    h) South Louisiana
    i) SLIPC
    j) Winn
    k) WCC
    l) River
    m) RCC
    n) Pine Prairie
    o) PPIPC
    p) Jackson Parish
    q) JPCC
    r) Lasalle
    s) LIPC

3) Any significant incident reports regarding any detention facility or detainee within the New Orleans ICE Field Office Area of Responsibility dated between February 8, 2021 and February 19, 2021.

30.    On March 22, 2021, ICE assigned request number 2021-ICFO-32190 to the

request and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). However,

ICE has yet to issue a determination regarding this request, which has now been pending for 136 business days.

31.    On March 11, 2021, ICE received the following FOIA request from Al Otro Lado:

1.  Any and all records including relating to use of force by employees of ICE on immigrant detainees at Adams County Detention Center ("ACDC") on September 27, 2020 or September 28, 2020.

2.  Any reports or documents regarding use of force at ACDC on September 27, 2020 or September 28, 2020, including but not limited to
    a.  All Significant Incident Reports ("SIR")
    b.  All reports, memoranda, and incident reports sent to the New Orleans ICE Field Office Director pursuant to any relevant ICE national detention standard.
    c.  All audiovisual recordings sent from the to the New Orleans ICE Field Office Director pursuant to any relevant ICE national detention standard.

3.  Any communication sent to or from the New Orleans ICE Field Office regarding any use of force incident at ACDC on September 27, 2020 or September 28, 2020. This search should contain, but should not be limited to, a keyword search or emails and instant messages for the following terms: "use of force" AND "Adams" OR "ACDC" between September 26, 2020 and the present. A search should also be done for any communications between the New Orleans ICE Field Office and the ICE Office of Professional Responsibility, the Department of Homeland Security Office of the Inspector General, the Department of Security Office of Civil Rights and Civil Liberties ("CRCL") and the Federal Bureau of Investigation regarding any use of force incident on September 27, 2020 or September 28, 2020.

4. All video, audio, or audiovisual recordings of ACDC's medical unit and Zulu unit on September 27, 2020 or September 28, 2020 between 9 a.m. and 5 p.m.

5. Documents identifying the persons present in ACDC's medical unit and Zulu unit on September 27, 2020 or September 28, 2020 between 9 a.m. and 5 p.m.

6. All documents sent to CRCL relating to the following October 7, 2020 CRCL complaint: https://static1.squarespace.com/static/5a33042eb078691c386e7bce/t/5f7f17f39e044f47175204fb/1602164723244/Re+CRCL+Complaint+ICE%27s+Use+of+Torture+to+Coerce+Immigrants+to+Sign+Immigration+Documents+at+Adams+County+Correctional+Facility.pdf

32. On March 22, 2021, ICE assigned number 2021-ICFO-32420 to this request and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). However, ICE has yet to issue a determination regarding this request, which has now been pending for 134 business days.

33. On April 12, 2021, ICE received the following FOIA request from Al Otro Lado:

1. Any and all records including relating to use of force by employees of ICE or Lasalle Corrections on immigrant detainees at Irwin County Detention Center ("ICDC") on April 21, 2020.

2. Any reports or documents regarding use of force at ICDC on April 21, 2020, including but not limited to
   a. All Significant Incident Reports ("SIR")
   b. All reports, memoranda, and incident reports sent to the Atlanta ICE Field Office or its Director pursuant to any relevant ICE national detention standard.

c. All audio, visual, or audiovisual recordings sent to the Atlanta ICE Field Office or its Director pursuant to any relevant ICE national detention standard.

3. Any communication sent to or from the Atlanta ICE Field Office regarding any use of force incident at ICDC on April 21, 2020. This search should contain, but should not be limited to, a keyword search or emails and instant messages for the following terms: "use of force" AND "Irwin" OR "ICDC" between April 20, 2021 and the present. A search should also be done for any communications between the Atlanta ICE Field Office and the ICE Office of Professional Responsibility, the Department of Homeland Security Office of the Inspector General, the Department of Security Office of Civil Rights and Civil Liberties ("CRCL") and the Federal Bureau of Investigation regarding any use of force incident on April 21, 2020.

4. All video, audio, or audiovisual recordings of ICDC's medical unit and C-1 unit on April 21, 2020 between 12 p.m. and 10 p.m.

5. Documents identifying the persons present in ICDC's medical unit and C-1 unit on April 21, 2020 between 12 p.m. and 10 p.m.

6. Any communications to and from employees of the Atlanta ICE Field Office containing the search terms "Yauro", "Debbie Nathan", "getting out", or "gettingout".

7. Any Form I-885 or equivalent form as described in 2011 PBNDS 2011 2.12(V)(a)(2) relating to any segregation decisions at ICDC between April 21, 2020 and April 26, 2020.

8. Any records relating to any disciplinary proceedings held at ICDC on April 26, 2020.

34.    The request also sought expedited processing on the grounds that the records requested are relevant to "widespread and exceptional media interest" in the ICE's

abuses, use of solitary confinement, retaliation against those exercising their First Amendment rights, and contracts with private prison contractors.

35.     On April 12, 2021, ICE assigned number 2021-ICFO-33621 to this request. However, ICE has yet to issue a determination regarding this request or the associated expedited processing request. This request has now been pending for 112 business days.

36.     On May 13, 2021, ICE received the following FOIA request from Al Otro Lado:

1.  Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Bryan S. Pitman between January 1, 2020 to the date this request is processed that includes any of the following key words:
    a.  "Karim"
    b.  "Golding"
    c.  "206 552 755"
    d.  "206 552 755"
    e.  "A206 552 755"
    f.  "Adelante"
    g.  "Shut Down Etowah"

    Mr. Pitman's email is "Bryan.S.Pitman@ice.dhs.gov"

2.  Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Michael K. Nelson between January 1, 2020 to the date this request is processed that includes any of the following key words:
    a.  "Karim"
    b.  "Golding"
    c.  "206 552 755"
    d.  "206 552 755"

       e.  "A206 552 755"
       f.  "Adelante"
       g.  "Shut Down Etowah"

Mr. Nelson's email is "Michael.K.Nelson@ice.dhs.gov"

3. Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Dianne L. Witte between January 1, 2020 to the date this request is processed that includes any of the following key words:
       a.  "Karim"
       b.  "Golding"
       c.  "206 552 755"
       d.  "206 552 755"
       e.  "A206 552 755"
       f.  "Adelante"
       g.  "Shut Down Etowah"

Ms. Witte's email is "diane.l.witte@ice.dhs.gov"

4. Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee John Hartnett between January 1, 2020 to the date this request is processed that includes any of the following key words:
       a.  "Karim"
       b.  "Golding"
       c.  "206 552 755"
       d.  "206 552 755"
       e.  "A206 552 755"
       f.  "Adelante"
       g.  "Shut Down Etowah"

Mr. Hartnett's email is "john.hartnett@ice.dhs.gov"

5. Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Charles P. Chiriaco between January 1, 2020 to

the date this request is processed that includes any of the following key words:

   a.  "Karim"
   b.  "Golding"
   c.  "206 552 755"
   d.  "206 552 755"
   e.  "A206 552 755"
   f.  "Adelante"
   g.  "Shut Down Etowah"

Mr. Chiriaco's email is "Charles.P.Chiriaco@ice.dhs.gov"

6. Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Michael A. Martin between January 1, 2020 to the date this request is processed that includes any of the following key words:

   a.  "Karim"
   b.  "Golding"
   c.  "206 552 755"
   d.  "206 552 755"
   e.  "A206 552 755"
   f.  "Adelante"
   g.  "Shut Down Etowah"

Mr. Martin's email is "Michael.A.Martin@ice.dhs.gov"

37.    On May 18, 2021, ICE responded by assigning number 2021-ICFO-34920 to the request and **refusing to initiate a search without a** "statement from the individual verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed and released to a third party."

38.    Though ICE must conduct a search notwithstanding the presence of exempt documents and balance privacy and disclosure interests, Al Otro Lado sent ICE a signed

third party disclosure form signed by the individual named in the records request on September 15, 2021. However, ICE has yet to issue a determination regarding this request, which has now been pending for 89 business days.

39.   On May 21, 2021, ICE received the following request from Al Otro Lado:

1. Any and all records relating to the death of Roylan Hernandez Diaz at  Richwood Correctional Center ("RCC") on October 15, 2019.

2. All records pertaining to Mr. Hernandez Diaz's detention, including detainee location logs, kites, grievances, responses to kites and grievances, and medical and mental health screenings and assessments.

3. All Mortality Reviews created by the Immigrant Health Services Corps ("IHSC") regarding the death of Mr. Hernandez Diaz (https://www.ice.gov/news/releases/ice-detainee-passes-away-louisiana). These reviews may be found in the Medical Quality Management Unit ("MQMU") Sharepoint Folder as described by, e.g., Section F.1.B (page 7) of IHSC's Mortality Review Policy: https://www.documentcloud.org/documents/6025551-IHSC-Operations-Memorandum-Mortality-Review.html.

4. All records relied upon or used to create the above mortality review.

5. Any communications regarding this event between IHSC and Lasalle Corrections and between IHSC and any people employed at RCC.

6. Any Root Cause Analysis created by the IHSC for any Sentinel Event occurring at RCC between January 1, 2019 to Present.

7. All records relied upon or used to create the following ICE Detainee Death Review regarding Mr. Hernandez Diaz: (https://www.ice.gov/doclib/foia/reports/ddr-Hernandez.pdf)

8. Any investigation reports regarding the death of Mr. Hernandez Diaz conducted by the ICE's Office of Professional Responsibility and all documents relied upon to prepare those reports.

9. Any electronic communications including but not limited to e-mails, text messages, and instant messages on any platform, to and from New Orleans Deputy Field Office Director John Hartnett containing the words "Roylan," "Hernandez Diaz," or "Hernandez-Diaz," His email address is diane.l.witte@ice.dhs.gov. The time range for this search should be from October 15, 2019 to the date the officer engages in this search.

10. Any electronic communications including but not limited to e-mails, text messages, and instant messages on any platform, to and from director or acting director of the New Orleans ICE Field Office containing the words "Roylan," "Hernandez Diaz," or "Hernandez-Diaz." Their email addresses are William.P.Joyce@ice.dhs.gov, Trey.Lund@ice.dhs.gov, and diane.l.witte@ice.dhs.gov. The time range for this search should be from October 15, 2019 to the date the officer engages in this search.

11. All reports, memoranda, or audits created or received on or after January 1, 2019, by the ICE Detention Standards Compliance Unit for RCC.

12. Any communications sent or received on or after January 1, 2019, between ICE's Detention Standards Compliance Unit and Lasalle Corrections or any of its subcontractors or subsidiaries regarding compliance or non-compliance with ICE's Performance-Based National Detention Standards.

13. All Significant Incident Reports ("SIR") and any associated records relating to RCC or immigrants detained therein between January 1, 2019 and the present. ICE's SIR policy is detailed here: https://www.dhs.gov/sites/default/files/publications/privacy_pia_2 3_ice_sen.pdf

14. All documents pertaining to Detainee Reporting and Information Line calls made from RCC between January 1, 2019 and the present. Information about the reporting line can be found here: https://www.ice.gov/contact/detention-information-line#:~:text=Th e%20ICE%20ERO%20Detention%20Reporting,%2D888%2D351 %2D4024.

15. All documents or copies thereof that may have accompanied Mr. Hernandez Diaz when he was transferred from one facility to another, including without limitation:
   a. Any Form I-216 and/or appropriate copies of Form I-77, Baggage Check (or IGSA equivalent);
   b. Any Form USM-553 or local Medical Transfer Summary form;
   c. Any Form 1-213, Record of Deportable/Inadmissible Alien Form;
   d. Any original or photocopy of Form I-203/203A,
   e. Order to Detain/Release Alien;
   f. Any Detainee Transfer Checklist;
   g. Any age verification documents (if applicable); Any classification sheet;
   h. Any charging documents/records of proceedings; and
   i. Any photographs

40.     The request also sought expedited processing on the grounds that the records requested are relevant to "widespread and exceptional media interest" in ICE's abuses, use of solitary confinement, and contracts with private prison contractors.

41.     On May 24, 2021, ICE responded by assigning number 2021-ICFO-35338 to the request and refusing to initiate a search without a "statement from the individual verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed and released to a third party."

42.    Al Otro Lado responded on September 17, 2021, highlighting the fact that the original request stated that Mr. Hernandez Diaz was deceased, informing ICE of its obligation to perform a search and balance privacy and disclosure interests even if some records were exempt, and including ICE's death notification for Mr. Hernandez Diaz.

43.    ICE has not issued any determination regarding this request or the associated request for expedited processing. The request has now been pending for 92 business days.

44.    On July 22, 2021 ICE received the following request from Al Otro Lado:

1.    All significant incident reports involving incidents at Etowah County Detention Center ("ECDC") between January 1, 2019 and the day you conduct the search for this request.

2.    Any contract discrepancy reports regarding ECDC between January 1, 2019 and the day you conduct the search for this request.

3.    All records in possession of ICE's Detention Monitoring Unit regarding ECDC created, dated, or received between January 1, 2019 and the day you conduct the search for this request.

4.    All records in possession of ICE's Contract Management Unit regarding ECDC created, dated, or received between January 1, 2019 and the day you conduct the search for this request.

5.    All communications sent by or received by ICE's New Orleans Field Office Director, ICE New Orleans Deputy Field Office Director John Harnett, or ICE New Orleans Assistant Field Office Director Michael Nelson between January 1, 2019 and the day you conduct the search for this request containing any of the following keywords:
   a.  Etowah
   b.  ECDC

c. Shut Down Etowah

45.    On July 22, 2021, ICE assigned the number 2021-ICFO-37886 to the request. However, ICE has yet to issue a determination regarding this request, which has now been pending for 42 business days.

46.    On September 23, 2020, this Court issued a preliminary injunction against ICE finding that Al Otro Lado was likely to succeed in proving that ICE failed to meet its statutory FOIA deadlines relating to another Al Otro Lado FOIA request. *See Decision and Order Granting Motion for Preliminary Injunction, Al Otro Lado v. DHS*, No. 2:20-cv-05191, Dkt. 35 (C.D. Cal. Sep. 23, 2021).

47.    At end of Fiscal Year 2020, ICE reported a 5,308 FOIA request backlog.[14]

### PLAINTIFF'S CLAIM FOR RELIEF

### COUNT ONE
### ICE's Failure to Issue Timely Determinations

48.    In the ten FOIA requests, *supra,* Al Otro Lado properly sought for records within the possession, custody, and control of ICE.

49.    An agency must make a determination on a FOIA request within twenty business days. 5 U.S.C. § 552(a)(6)(A)(i). However, the agency may extend its response

---

[14] *See* Department of Homeland Security Privacy Office, *Fiscal Year 2020 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services at 29,*Mar. 2021,
https://www.dhs.gov/sites/default/files/publications/dhs_fy2020_foia_report_cleared.pdf.

time in case of "unusual circumstances," by no more than ten business days provided it sends the requestor "written notice." 5 U.S.C. § 552(a)(6)(B)(i).

50.    ICE has not issued determinations for any of Al Otro Lado's  ten requests.

51.    By failing to timely issue determinations for these cases, ICE has also failed to perform adequate searches and wrongfully withheld records in violation of FOIA.

## COUNT TWO
### ICE's Pattern and Practice of Failing to Issue Timely Determinations

52.    In the ten FOIA requests, *supra,* Al Otro Lado properly sought records within the possession, custody, and control of ICE.

53.    An agency must make a determination on a FOIA request within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i). However, the agency may extend its response time in case of "unusual circumstances," by no more than 10 business days provided it sends the requestor "written notice." 5 U.S.C. § 552(a)(6)(B)(i).

54.    ICE regularly fails to timely adjudicate Al Otro Lado's FOIA requests in accordance with its obligation under law. Specifically, ICE engages in a pattern or practice of failing to make determinations within FOIA's statutory time period. ICE has no legal basis for failing to meet these deadlines.

## COUNT THREE
### ICE's Failure to Issue Timely Expedited Processing Decisions

55.    Al Otro Lado requested expedited processing in request numbers 2021-ICFO-33621 and 2021-ICFO-35338 on April 21 and May 21, 2021 respectively.

56.    FOIA requires agencies to provide for expedited processing of requests for records in cases in which the requester demonstrates a compelling need and in other cases determined by the agency. 5 U.S.C. § 552(a)(6)(E). Upon receiving a request for expedited processing, an agency must provide a determination of whether the request for expedited processing will be granted within ten calendar days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

57.    ICE has yet to respond to the above requests for expedited processing.

58.    By failing to timely respond to Plaintiffs' requests for expedited processing, ICE has violated FOIA.

## COUNT FOUR
### ICE's Failure to Conduct a Search and Segregate Exempt Records

59.    ICE refused to initiate searches regarding requests 2021-ICFO-34920 and 2021-ICFO-35338 on May 18 and 21, 2021 respectively, stating that Al Otro Lado must first provide signed third-party waivers.

60.    FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records responsive to a FOIA request. *See* 5 U.S.C. § 552(a)(3)(C)-(D).

61.     When an agency withholds records, the burden falls on the agency to prove that a FOIA exemption applies and that it outweighs FOIA's policy of disclosure. *See, e.g.*, 5 U.S.C. § 552(a)(4)(B); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1116 (9th Cir. 1988). When an agency determines that a portion of a record should be withheld under an exemption, it must still release any portions of that record that contain "reasonably segregable" non-exempt information. 5 U.S.C. § 552(b).

62.     By failing to initiate a search, balance the equities of disclosure, and segregate exempt records, ICE has violated FOIA.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1) Order ICE to make immediate determinations on Plaintiff's FOIA requests as mandated by 5 U.S.C. § 552(a)(6)(A)(i);

2) Declare that Defendant has a pattern and practice of failing of to issue timely determinations of Plaintiff's FOIA requests and that Plaintiff is entitled to immediate processing and disclosure of the requested records;

3) Issuing an injunction requiring Defendant to make determinations on Plaintiff's future FOIA requests within FOIA's statutory deadlines;

4) Ordering Defendant to make determinations on Plaintiff's expedited processing requests within 10 days of the Court's order or as the Court deems appropriate;

5) Provide for expeditious proceedings in this action;

6) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

7) Award costs and reasonable attorney fees incurred under 5 U.S.C. § 552(a)(4)(E); and

8)  Grant such other relief as the Court may deem just and proper.

Dated: September 20, 2021                 Respectfully submitted,

                                          _____/s/_____Jeremy Jong_____

Jeremy Jong
Karlyn Kurichety
AL OTRO LADO, INC.
P.O. Box 907
Maywood, CA 90270
Tel: (323) 205-6420
Fax: (323) 430-8793
jeremy@alotrolado.org
karlyn@alotrolado.org

Attorneys of Plaintiff

*admitted pro hac vice