Jeremy Jong (admitted pro hac vice)
Karlyn Kurichety (State Bar No. 313265)
Al Otro Lado, Inc.
P.O. Box 907
Maywood, CA 90270
Telephone: (323) 205-6420
Facsimile: (323) 430-8793
jeremy@alotrolado.org
karlyn@alotrolado.org

Attorneys for Plaintiff Al Otro Lado, Inc.

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
PAUL B. LA SCALA (Cal. Bar No. 186939)
Assistant United States Attorney
  Federal Building, Suite 7516
  300 North Los Angeles Street
  Los Angeles, California 90012
  Telephone: (213) 894-2467
  Facsimile: (213) 894-7819
  Paul.LaScala@usdoj.gov

Attorneys for Defendant
U.S. Immigration and Customs Enforcement

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AL OTRO LADO,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>    Defendants. | No. CV 21-03462 CAS (MAAx)<br><br>**JOINT RULE 26(f) REPORT**<br><br>Scheduling Conference:<br>  Date:  March 28, 2022<br>  Time:  11:00 a.m.<br>  Ctrm:  First Street Courthouse,<br>          Courtroom 8D<br><br>Honorable Christina A. Snyder |

Plaintiff Al Otro Lado, Inc. ("Plaintiff") and defendant United States Immigration and Customs Enforcement ("Defendant" or "ICE"), having met and conferred, in accordance with the Court's Order (Dkt. No. 49), hereby submit their Joint Report as required by Fed. R. Civ. P. 26(f) and Local Rule 26-1.

**I.   Statement of the Case**

This is an action brought by Plaintiff under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking the disclosure of the following:

- All Mortality Reviews created by the Immigrant Health Service Corps ("IHSC") regarding the death of Anthony Jones aka Henry Missick.
- All records relied upon to create the above mortality review
- Any communications regarding this event between IHSC and Core Civic and between IHSC and any people employed at Adams County Detention Center ("ACDC")
- Any root cause analysis created by the IHSC for any Sentinel Event occurring at ACDC between January 1, 2019, to present.
- Any communications containing the keywords "Anthony Jones" between the ICE office of Congressional Relations.
- Any investigation reports conducted by the ICE's Office of Professional Responsibility and all documents related to investigation of the death of Anthony Jones.
- Any electronic communications including but not limited to e-mails, text messages, and instant messages on any platform, to and from New Orleans Field Office Director Dianne Witte and New Orleans Assistant Field Office Director Robert Hagan containing the words "Anthony Jones" from December 16, 2020 to present.
- All reports, memoranda, or audits created or received on or after January 1, 2019, by the ICE Detention Standards Compliance Unit for ACDC.
- Any communications occurring on or after January 1, 2019, between ICE's Detention Standards Compliance Unit and CoreCivic or any of its subcontractors regarding compliance or non-compliance with ICE's Performance-Based National Detention Standards.

- All Significant Incident Reports ("SIR") and any associated records relating to ACDC or immigrants detained therein between January 1, 2019 and the present.
- All documents pertaining to Detainee Reporting and Information Line calls made from ACDC between January 1, 2020 and the present.
- All records concerning the names, number, and qualifications of any and all full-time, part-time, and contracted medical staff employed or contracted to work at ACDC in November and December of 2020.
- Any and all records including relating to use of force by employees of ICE on immigrant detainees at Winn Correctional Center on January 14, 2021.
- Any reports or documents regarding use of force at Winn Correctional Center on January 14, 2021.
- Any communication sent to or from the New Orleans ICE Field Office regarding any use of force incident at Winn Correctional Center on January 14, 2021.
- All video, audio, or audiovisual recordings of the kitchen at Winn Correction Center on January 14, 2021, between 11:00am and 4:00pm.
- Documents identifying the persons present in kitchen at Winn Correctional Center on January 14, 2021, between 11:00am and 4:00pm.
- Any contracts or agreements between any local government and United States government and its agencies relating to the operation of Winn Correctional Center.
- All records, including but not limited to communications and written policies, relating to the
  - a) functioning of any generators
  - b) availability of fuel, or
  - c) power outages at any detention facility in the Area of Responsibility of the New Orleans ICE Field Office (Louisiana, Mississippi, and Alabama) dated, sent, or received between February 8, 2021 and February 19, 2021.
- All communications sent or received between February 8, 2021 and February 19, 2021 to and from the Immigration Health Services Corps and the Field Office Director,

2

Deputy Field Office Directors, and Assistant Field Office Directors in the New Orleans Field Office regarding transfers to and from any detention facilities within the New Orleans ICE Field Office Area of Responsibility.

- All communications to and from the Field Office Director, Deputy Field Office Directors, and Assistant Field Office Directors in the New Orleans ICE Field Office sent or received between February 8, 2021 and February 19, 2021 containing the keywords "water" and one or more of the following terms:

  a) Adams
  b) ACDC
  c) Etowah
  d) ECDC
  e) Allen Parish
  f) Richwood
  g) RCC
  h) South Louisiana
  i) SLIPC
  j) Winn
  k) WCC
  l) River
  m) RCC
  n) Pine Prairie
  o) PPIPC
  p) Jackson Parish
  q) JPCC
  r) Lasalle
  s) LIPC

- Any significant incident reports regarding any detention facility or detainee within the New Orleans ICE Field Office Area of Responsibility dated between February 8,

2021 and February 19, 2021.

- Any and all records including relating to use of force by employees of ICE on immigrant detainees at Adams County Detention Center ("ACDC") on September 27, 2020 or September 28, 2020.
- Any reports or documents regarding use of force at ACDC on September 27, 2020 or September 28, 2020, including but not limited to
    a. All Significant Incident Reports ("SIR")
    b. All reports, memoranda, and incident reports sent to the New Orleans ICE Field Office Director pursuant to any relevant ICE national detention standard.
    c. All audiovisual recordings sent from the to the New Orleans ICE Field Office Director pursuant to any relevant ICE national detention standard.
- Any communication sent to or from the New Orleans ICE Field Office regarding any use of force incident at ACDC on September 27, 2020 or September 28, 2020.
- All video, audio, or audiovisual recordings of ACDC's medical unit and Zulu unit on September 27, 2020 or September 28, 2020 between 9 a.m. and 5 p.m.
- Documents identifying the persons present in ACDC's medical unit and Zulu unit on September 27, 2020 or September 28, 2020 between 9 a.m. and 5 p.m.
- All documents sent to CRCL relating to the following October 7, 2020 CRCL complaint: https://static1.squarespace.com/static/5a33042eb078691c386e7bce/t/5f7f17f39e044f47175204fb/1602164723244/Re+CRCL+Complaint+ICE%27s+Use+of+Torture+to+Coerce+Immigrants+to+Sign+Immigration+Documents+at+Adams+County+Correctional+Facility.pdf
- Any and all records including relating to use of force by employees of ICE or Lasalle Corrections on immigrant detainees at Irwin County Detention Center ("ICDC") on April 21, 2020.
- Any reports or documents regarding use of force at ICDC on April 21, 2020, including but not limited to
    a. All Significant Incident Reports ("SIR")

4

      b. All reports, memoranda, and incident reports sent to the Atlanta ICE Field Office or its Director pursuant to any relevant ICE national detention standard.

      c. All audio, visual, or audiovisual recordings sent to the Atlanta ICE Field Office or its Director pursuant to any relevant ICE national detention standard.

- Any communication sent to or from the Atlanta ICE Field Office regarding any use of force incident at ICDC on April 21, 2020.
- All video, audio, or audiovisual recordings of ICDC's medical unit and C-1 unit on April 21, 2020 between 12 p.m. and 10 p.m.
- Documents identifying the persons present in ICDC's medical unit and C-1 unit on April 21, 2020 between 12 p.m. and 10 p.m. 6. Any communications to and from employees of the Atlanta ICE Field Office containing the search terms "Yauro", "Debbie Nathan", "getting out", or "gettingout".
- Any Form I-885 or equivalent form as described in 2011 PBNDS 2011 2.12(V)(a)(2) relating to any segregation decisions at ICDC between April 21, 2020 and April 26, 2020.
- Any records relating to any disciplinary proceedings held at ICDC on April 26, 2020.
- Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Bryan S. Pitman between January 1, 2020 to the date this request is processed that includes any of the following key words:

    a. "Karim"
    b. "Golding"
    c. "206 552 755"
    d. "206 552 755"
    e. "A206 552 755"
    f. "Adelante"
    g. "Shut Down Etowah"

- Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Michael K. Nelson between January 1, 2020 to the date this request is processed that includes any of the following key words:
  - a. "Karim"
  - b. "Golding"
  - c. "206 552 755"
  - d. "206 552 755"
  - e. "A206 552 755"
  - f. "Adelante"
  - g. "Shut Down Etowah"
- Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Dianne L. Witte between January 1, 2020 to the date this request is processed that includes any of the following key words:
  - a. "Karim"
  - b. "Golding"
  - c. "206 552 755"
  - d. "206 552 755"
  - e. "A206 552 755"
  - f. "Adelante"
  - g. "Shut Down Etowah"
- Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee John Hartnett between January 1, 2020 to the date this request is processed that includes any of the following key words:
  - a. "Karim"
  - b. "Golding"

  c. "206 552 755"

  d. "206 552 755"

  e. "A206 552 755"

  f. "Adelante"

  g. "Shut Down Etowah"

- Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Charles P. Chiriaco between January 1, 2020 to the date this request is processed that includes any of the following key words:

  a. "Karim"

  b. "Golding"

  c. "206 552 755"

  d. "206 552 755"

  e. "A206 552 755"

  f. "Adelante"

  g. "Shut Down Etowah"

- Any communications including but not limited to emails, text messages, instant messages, or skype messages sent to or received by ICE employee Michael A. Martin between January 1, 2020 to the date this request is processed that includes any of the following key words:

  a. "Karim"

  b. "Golding"

  c. "206 552 755"

  d. "206 552 755"

  e. "A206 552 755"

  f. "Adelante"

  g. "Shut Down Etowah"

- Any and all records relating to the death of Roylan Hernandez Diaz at Richwood

1  Correctional Center ("RCC") on October 15, 2019.
2  • All records pertaining to Mr. Hernandez Diaz's detention, including detainee
3  location logs, kites, grievances, responses to kites and grievances, and medical and
4  mental health screenings and assessments.
5  • All Mortality Reviews created by the Immigrant Health Services Corps ("IHSC")
6  regarding the death of Mr. Hernandez Diaz (https://www.ice.gov/news/releases/ice-
7  detainee-passes-away-louis iana). These reviews may be found in the Medical Quality
8  Management Unit ("MQMU") Sharepoint Folder
9  • All records relied upon or used to create the above mortality review.
10 • Any communications regarding this event between IHSC and Lasalle Corrections
11 and between IHSC and any people employed at RCC.
12 •  Any Root Cause Analysis created by the IHSC for any Sentinel Event occurring
13 at RCC between January 1, 2019 to Present.
14 • All records relied upon or used to create the following ICE Detainee Death
15 Review regarding Mr. Hernandez Diaz: (https://www.ice.gov/doclib/foia/reports/ddr-
16 Hernandez.pdf)
17 • Any investigation reports regarding the death of Mr. Hernandez Diaz conducted
18 by the ICE's Office of Professional Responsibility and all documents relied upon to
19 prepare those reports.
20 • Any electronic communications including but not limited to e-mails, text
21 messages, and instant messages on any platform, to and from New Orleans Deputy Field
22 Office Director John Hartnett containing the words "Roylan," "Hernandez Diaz," or
23 "Hernandez-Diaz,"
24 • All reports, memoranda, or audits created or received on or after January 1, 2019,
25 by the ICE Detention Standards Compliance Unit for RCC.
26 • Any communications sent or received on or after January 1, 2019, between ICE's
27 Detention Standards Compliance Unit and Lasalle Corrections or any of its
28 subcontractors or subsidiaries regarding compliance or non-compliance with ICE's

Performance-Based National Detention Standards.

- All Significant Incident Reports ("SIR") and any associated records relating to RCC or immigrants detained therein between January 1, 2019 and the present.
- All documents pertaining to Detainee Reporting and Information Line calls made from RCC between January 1, 2019 and the present.
- All documents or copies thereof that may have accompanied Mr. Hernandez Diaz when he was transferred from one facility to another, including without limitation:
  - a. Any Form I-216 and/or appropriate copies of Form I-77, Baggage Check (or IGSA equivalent);
  - b. Any Form USM-553 or local Medical Transfer Summary form;
  - c. Any Form 1-213, Record of Deportable/Inadmissible Alien Form;
  - d. Any original or photocopy of Form I-203/203A,
  - e. Order to Detain/Release Alien;
  - f. Any Detainee Transfer Checklist;
  - g. Any age verification documents (if applicable); Any classification sheet;
  - h. Any charging documents/records of proceedings; and
  - i. Any photographs
- All significant incident reports involving incidents at Etowah County Detention Center ("ECDC") between January 1, 2019 and the day you conduct the search for this request.
- Any contract discrepancy reports regarding ECDC between January 1, 2019 and the day you conduct the search for this request.
- All records in possession of ICE's Detention Monitoring Unit regarding ECDC created, dated, or received between January 1, 2019 and the day you conduct the search for this request.
- All records in possession of ICE's Contract Management Unit regarding ECDC created, dated, or received between January 1, 2019 and the day you conduct the search for this request.

- All communications sent by or received by ICE's New Orleans Field Office Director, ICE New Orleans Deputy Field Office Director John Harnett, or ICE New Orleans Assistant Field Office Director Michael Nelson between January 1, 2019 and the day you conduct the search for this request containing any of the following keywords:

    a. Etowah

    b. ECDC

    c. Shut Down Etowah

Plaintiff filed its Complaint on May 20, 2021.  Dkt. No. 1.  Plaintiff filed its First Amended Complaint on September 23, 2021 seeking determinations for the above, which were requested by Plaintiff in ten seperate FOIA requests, as well as an injunction against Defendant's alleged pattern and practice of failing to issue those determinations within FOIA's statutory deadlines.  Dkt. No. 46.  Defendant filed an answer to the First Amended Complaint on October 4, 2021.  Dkt. No. 48.

The parties have conferred telephonically, on multiple occasions, regarding the scope of Plaintiff's FOIA request, and the status of Defendant's further search for responsive documents.  The parties have worked cooperatively to try to resolve this matter, or at least narrow the issues before this Court, and intend to engage in further discussions.

Defendant is processing an average of 500 pages of documents per month with approximately 7500 pages of documents remaining to be reviewed.  Thus, Defendant anticipates providing a final response to Plaintiff's FOIA request by May 31, 2023.  Additionally, the parties intend to meet and confer regarding Defendant's final response before filing their motions for summary judgment in this case.

## II. Legal Issues

**Defendant's Position:**

The waiver of sovereign immunity under the FOIA gives the Court jurisdiction to enjoin the agency from withholding agency records improperly withheld and to order the production of any agency records improperly withheld from the Plaintiff.  5 U.S.C. §

552(a)(4)(B); *Spurlock v. FBI*, 69 F.3d 1010, 1015 (9th Cir. 1995). Under FOIA, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the courts. *Hayden v. National Security Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980). The agency has the burden to justify the non-disclosure of documents and establish that a particular document is exempt from disclosure. *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995).

To prevail in a FOIA action where the adequacy of the search is at issue, the agency must show that it made "a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see, e.g.*, *Gerstein v. CIA*, No. 06-4643, 2008 WL 4415080, at *3 (N.D. Cal. Sept. 26, 2008) ("The adequacy of the agency's search is judged by a standard of reasonableness…." (quoting *Citizens Comm'n on Human Rights*, 45 F.3d at 1328); *Bonaparte v. DOJ*, 531 F. Supp. 2d 118, 122 (D.D.C. 2008) ("The Court's review of the adequacy of an agency's search for responsive records is based on principles of reasonableness.").

In regard to any information that might be withheld, the FOIA generally provides that any person has a right to obtain access to federal agency records, except to the extent that such records (or portions of them) are protected from public disclosure by one of nine exemptions. 5 U.S.C. §552(b). Here, because Defendant has withheld information responsive to Plaintiff's requests, additional issues will arise specific to the FOIA exemptions claimed.

In regard to the pattern and practice claim (Count Two of the FAC), Plaintiff claims that Defendant has an alleged "pattern or practice" of failing to make determinations within FOIA's statutory time period. Yet, Plaintiff has not alleged that a pattern or practice will impair Plaintiff's lawful access to information in the future, as required to sustain a pattern or practice claim. *See Animal Legal Defense Fund v. U.S.*

1  *Dep't of Agri. et al.*, No. 18-16327 (9th Cir. 2019); P*ayne Enterprises, Inc. v. United
2  States*, 837 F.2d 486, 491 (D.C. Cir. 1988). Moreover, as will be discussed in greater
3  detail in Defendant's anticipated summary judgment motion, Plaintiff cannot establish
4  that Defendant egregiously adheres to an illegal policy or practice. Thus, Plaintiff's
5  claim lacks merit.

6  **Plaintiff's Position:**

7  Courts generally consider agency intent, egregiousness of agency delays, and
8  whether such delays will likely recur as relevant factors in deciding pattern and practice
9  claims. *See e.g. Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't
10 of Army*, 58 F. Supp. 3d 1050, 1055 (C.D. Cal. 2014); *Cmty. Ass'n for Restoration of the
11 Env't, Inc. v. U.S. E.P.A.*, 36 F. Supp. 3d 1039, 1049 (E.D. Wash. 2014).

12 **III.   Damages**
13 Not applicable.  There are no damages in a FOIA action.
14 **IV.   Insurance**
15 Not applicable.  There are no insurance coverage issues in this case.

## V. Motions

The parties submit that all issues in this FOIA action can be decided and fully resolved on summary judgment. The parties respectfully request that the Court adopt the following briefing schedule:

| Action | Date Completed |
|---|---|
| Defendant will file and serve a Motion for Summary Judgment and *Vaughn* Index/Declaration[1] | June 30, 2023 |
| Plaintiff will file any Cross-Motion for Summary Judgment and Opposition to Defendant's Motion | July 28, 2023 |
| Defendant will file a Reply/Opposition | August 25, 2023 |
| Plaintiff will file any Reply | September 15, 2023 |
| Hearing on Cross-Motions | October 16, 2023, at 10:00 a.m. |

## VI. Complexity

The parties agree that the Manual for Complex Litigation should not apply to this case.

## VII. Status of Discovery

**Defendant's Position:**

District courts typically resolve actions to enforce FOIA on summary judgment. *See, e.g.*, *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114 (9th Cir. 1988); *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008); *Sakamoto v. EPA*, 443

---

[1] In FOIA cases, the agency will typically identify the withheld documents and the basis on which they are being withheld by submitting a declaration(s). In addition, where the adequacy of the agency's search is at issue, the agency relies upon declarations. These declarations or affidavits (singly or collectively) are often referred to as a *Vaughn* Index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564 (1974). *See also Wiener v. FBI*, 943 F.2d 927 at 978, n.6 (9th Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992) ("[w]e refer to these affidavits [of FBI agents and CIA officers] collectively as the *Vaughn* index").

13

F.Supp.2d 1182, 1188 (N.D. Cal. 2006) ("It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim."); *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) ("FOIA cases are typically and appropriately decided on motions for summary judgment."). "Procedurally, district courts typically decide FOIA cases on summary judgment before a plaintiff can conduct discovery." *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (citing *Jones v. Federal Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994)). Defendant submits that discovery is only appropriate where "an agency has not taken adequate steps to uncover responsive documents," and discovery requests will be denied "where an agency's declarations are reasonably detailed, submitted in good faith, and the court is satisfied that no factual dispute exists." *Lawyers' Comm.*, 534 F. Supp. 2d at 1132 (citations and quotations omitted). Accordingly, Defendant submits that this matter should be resolved on summary judgment. If Plaintiff were to engage in premature discovery on its pattern and practice claim, Defendant will move for a protective order so that it can focus on its continuing production and to give the Parties an opportunity to narrow the issues before engaging in discovery, if at all.

To the extent that Plaintiff seeks discovery in regard to the pattern and practice claim (Count Two of the FAC), Defendant maintains that it should not take place until after Defendant moves for summary judgment, and the need for discovery should be evaluated at that time in accordance with Federal Rule of Civil Procedure 56(d). *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (stating that in FOIA "cases courts may allow the government to move for summary judgment before the plaintiff conducts discovery" and citing cases supporting the rule that denying discovery may be proper in FOIA cases). However, in the event that the Court orders discovery in this case, Defendant proposes that the parties confer once Plaintiff is able to articulate the specific scope of discovery they contemplate so that the parties may jointly propose discovery deadlines.

      **Plaintiff's Position:**

      Plaintiff submits that though Defendant opposes discovery on the grounds that FOIA cases can typically be resolved on motions for summary judgment without discovery, that presumption does not apply to cases, like this one, in which the plaintiff alleges a FOIA pattern and practice violation. *See Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1190 (N.D. Cal. 1998) (discovery may properly commence… on the [agency's] policies and practices for responding to FOIA requests, and the resources allocated to ensure its compliance with the FOIA time limitations.); Transcript of Proceedings, *Nightingale v. U.S. Citizenship & Immigr. Servs.,* NO. C 19-cv-3512 WHO, Dkt. 48 at 20-21(N.D. Cal Oct. 17, 2019).

      The pattern practice in this case does not involve any particular request for documents or whether such documents should be released, but rather whether Defendant has a pattern or practice of violating the statutory deadlines for issuing FOIA determinations regarding Al Otro Lado's requests. As such, Plaintiffs believe discovery is necessary in this matter.

**VIII.  Discovery Plan**

      The parties maintain that because this is a FOIA action, the usual discovery process does not apply.  FOIA cases are different from other civil matters subject to the discovery provisions of the Federal Rules of Civil Procedure because the government bears the burden to justify non-disclosure of documents.  *See* 5 U.S.C. § 552(a)(4)(B); *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987).  Because the government bears the burden of justifying non-disclosure in a FOIA case, discovery is not essential.

      Moreover, discovery is greatly restricted in FOIA actions.  *See Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), aff'd, 349 F.3d 657 (D.C. Cir. 2003).  It is generally limited to the scope of an agency's search, its indexing and classification procedures, and similar factual matters.  *Id*.  Permissible discovery concerning such factual issues generally takes place, if at all, after the government moves for summary judgment and submits supporting affidavits and memorandum of

law. *See, e.g., Lane*, 523 F.3d at 1134-35 (holding that district court's "delay of discovery" with respect to plaintiffs FOIA claim until after summary judgment "was certainly within its discretion).

Plantiff submits that, for the reasons explained in the preceding section, discovery will be necessary to resolve Plaintiff's pattern and practice claim. Plaintiffs anticipate seeking discovery related, but not limited, to: Defendant's treatment of Al Otro Lado FOIA requests compared to Defendant's administration of FOIA requests of filed by other organizations, the news media, and the general public as well as Defendant's methods for managing pending FOIA requests—both current and backlogged; the extent of and reasons for and ICE's backlogs of FOIA requests in the last five years; efforts taken to reduce these backlogs; amount of FOIA requests received annually by Defendant; allocation of Defendant's budget to disposition of FOIA request; and Defendant's processing of FOIA requests filed by named Plaintiff.  Plaintiff proposes the following discovery schedule:

| Event | Plaintiff's Proposed Date |
| --- | --- |
| Initial disclosures | April 1, 2022 |
| Start of discovery | May 1, 2022 |
| Close of fact discovery | March 1, 2023 |

As noted above, Defendant reiterates discovery is not appropriate at this juncture, if at all.

**IX.   Expert Discovery**

The parties do not anticipate the use of expert witnesses in this case.

**X.    Additional Parties/Amendment of Pleadings**

The parties do not anticipate any additional parties or amendments to the pleadings.

**XI.   Settlement and Alternative Dispute Resolution ("ADR") Procedure Selection**

The parties maintain that there are no damages in a FOIA action.  As stated above,

16

the Court has jurisdiction to enjoin the agency from withholding agency records improperly withheld and to order the production of any agency records improperly withheld from the Plaintiff.  Thus, FOIA matters do not lend themselves to traditional settlement conference procedures.  The parties request that the action be exempted from the settlement requirements of Local Rule 16.

In the event the parties are required to select one of the ADR Procedures specified in Local Rule 16-15.4, the parties request a mediation with a mediator from the Central District mediation panel (ADR Procedure No. 2).

## XII. Preliminary Trial Estimate

The parties do not anticipate a need for trial, either by judge or jury, on this matter.  As set forth above, the parties submit that all of the claims in this case may be resolved on summary judgment.

## XIII. Other Issues

The parties are not presently aware of any other issues that would affect the status or management of the case.

Dated: March 9, 2022                     AL OTRO LADO, INC.


　/s/ Jeremy Jong
JEREMY JONG*

Attorneys for Plaintiff
Al Otro Lado, Inc.

| | |
|---|---|
| Dated: March 9, 2022 | TRACY L. WILKISON<br>United States Attorney<br>DAVID M. HARRIS<br>Assistant United States Attorney<br>Chief, Civil Division<br>JOANNE S. OSINOFF<br>Assistant United States Attorney<br>Chief, General Civil Section<br><br> /s/ Paul B. La Scala<br>PAUL B. LA SCALA<br>Assistant United States Attorney<br><br>Attorneys for Defendant<br>U.S. Immigration and Customs Enforcement |

   *Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.