Jeremy Jong (admitted pro hac vice)
Karlyn Kurichety (State Bar No. 313265)
Al Otro Lado, Inc.
P.O. Box 907
Maywood, CA 90270
Telephone: (323) 205-6420
Facsimile: (323) 430-8793
jeremy@alotrolado.org
karlyn@alotrolado.org

Attorneys for Plaintiff Al Otro Lado

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
PAUL B. LA SCALA (Cal. Bar No. 186939)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2467
Facsimile: (213) 894-7819
E-mail: Paul.LaScala@usdoj.gov

Attorneys for Defendant U.S. Immigration and Customs Enforcement

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AL OTRO LADO,<br><br>Plaintiff,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | No. CV 21-03462-CAS(MAAx)<br><br>**JOINT REPORT AS TO THE PARTIES' POSITIONS REGARDING DISCOVERY**<br><br>Hon. Christina A. Snyder<br>United States District Judge |

Plaintiff Al Otro Lado, Inc. and defendant United States Immigration and Customs Enforcement ("ICE") submit their Joint Report as to the Parties' Positions Regarding Discovery, as ordered by the Court. *See* Dkt. 56.

**I.     Statement of the Case**

   **A. Plaintiff's Statement:**

   This is an action brought by Al Otro Lado under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking responses to ten of its FOIA requests to ICE requesting records regarding treatment of noncitizens in ICE's southeastern detention facilities. At issue here, Al Otro Lado seeks an injunction against ICE's alleged pattern and practice of failing to comply with FOIA's thirty business day deadline for issuing determinations in response to FOIA requests. *See* 5 U.S.C. § 552(a)(6).

   On February 23, 2022, Al Otro Lado through Defendant's counsel, requested the following in an attempt to avoid formal discovery:

   1. All documents and communications by email, text message, Lync, skype, or other messaging service, concerning the processing of the FOIA Requests filed by Al Otro Lado
   2. All documents reflecting processing times for requests filed by Al Otro Lado.
   3. The calendars of all employees or contractors who have worked or are working on processing Al Otro Lado requests.
   4. All documents reflecting ICE average FOIA processing times
   5. All documents containing statistics reflecting ICE processing times for FOIA requests, broken down by
      a. whether the requestor is involved in litigation concerning the FOIA requests at issue
      b. whether the requestor has been granted expedited processing whether the requestor is an organization or an individual and whether the requestor is a member of the news media

1

      c. whether the requestor is deemed by the agency to be primarily engaged in information dissemination

6. All policies and guidance concerning the processing of organizational, news media, primarily engaged in information dissemination and lawsuits related to ICE FOIA requests

7. Annual budgets for the ICE FOIA department since the start of Fiscal Year 2020

8. All documents concerning funding requests by DHS ICE FOIA processing since the start of the FY 2020, including, but not limited to, requests associated with the approval and use of overtime, contracts pertaining to ICE staffing, or other resources needed to comply with FOIA's statutory timeframe.

9. All documents concerning internal complaints filed by ICE employees or contract employees related to FOIA processing

10. All monthly reports by ICE to the FOIA Compliance and Oversight Team since May 5, 2020

The parties, in their March 9, 2022 Joint Rule 26(f) Report, informed the Court of their respective positions on whether discovery was necessary to resolve that pattern or practice claim in this case. See ECF No. 50 at 14-16. At the March 28, 2022 status conference, the Court asked the parties to attempt to resolve the discovery dispute informally. On April 11, 2022, Al Otro Lado modified their original informal discovery request as follows:

> [W]e can obtain responses to request numbers 4, 5(a),(b), and (e), and 7 by other means. We can drop request 6 as well, except as to whatever policies or guidance reflecting treatment of requests made by nonprofits or organizational requestors. We would add as well that we'd find particularly useful a monthly breakdown of number of average and median days pending for outstanding ICE FOIA requests by whether they are requests for A files, which are covered by the *Nightingale* injunction, or non A-file requests, which are not.

2

However, the parties have been unable to reach any agreement as to discovery. At the June 13, 2022 status conference, the Court ordered the parties to submit a joint report containing their arguments concerning whether discovery is warranted in this case.

**B. Defendant's Statement:**

In the original complaint, Plaintiff sought the release of documents responsive to four FOIA requests made to ICE. *See* Dkt. 1 at ¶¶ 17-24. ICE has already produced responsive documents subject to withholding or redactions under certain exemptions. Before that production was completed, however, Plaintiff amended its complaint to add allegations involving six more FOIA requests and to assert a new claim based on "pattern and practice." *See* Dkt. 46 at ¶¶ 29-45, 52-54. These 10 FOIA requests include 60 subparts–many with their own subparts—covering a wide range of dissimilar topics, such as generators and fuel performance standards, Congressional inquiries into detainees' deaths while in custody, COVID-19 protocols, and A-files of detainees. *See* Dkt. 50 at 1-10 (Statement of Case in Joint Rule 26(f) Report).

As of the filing of this joint report, ICE has processed about 8600 pages of documents and has dedicated its resources to expedite the processing of the remaining 3400 pages of documents. This expedited processing allowed the parties to advance their proposed schedule by seven months. *See* Dkt. 54 at 2-3. At the June 13, 2022 status conference, the Court accepted this schedule and confirmed it in an order. *See* Dkt. 56.

While ICE has been working diligently and expeditiously to process Plaintiff's FOIA requests, ICE also must respond to the current 16,296 outstanding FOIA requests, of which 13,715 are backlogged (i.e., pending longer than 20 days), including 159 active FOIA lawsuits.[1] Plaintiff now seeks to magnify ICE's burden by requesting extensive

---

[1] Between Fiscal Year (FY) 2017 and FY 2020, the ICE FOIA Office experienced approximately a 240% increase in FOIA requests. The ICE FOIA office has been working diligently to reduce backlogs from FY 2021 in which the ICE FOIA office began with 7,034 backlogged FOIA requests and by the end of 2021, the ICE FOIA office reduced the backlog to 391 requests outstanding. *See* FOIA.gov (Freedom of Information Act: Create a Quarterly Report).

discovery on its pattern-and-practice claim now. But, as demonstrated in Section II.B., *infra*, case law in the Ninth Circuit favors postponing discovery (if allowing it at all) in FOIA cases until after a federal agency moves for summary judgment. *See*, *e.g.*, *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008).

In addition, ICE's approach to processing FOIA requests is to ordinarily respond to FOIA requests according to their order of receipt. *See* 6 C.F.R. § 5.5(a). ICE maintains that Plaintiff's pattern-and-practice claim is a transparent effort to manufacture a basis to force ICE to place Plaintiff's requests at the front of the FOIA line. The superficiality of this claim is demonstrated by the fact that it is comprised of just three conclusory paragraphs in the FAC. *See* Dkt. 46 at ¶¶ 52-54. As noted in *Cohen v. Fed. Bureau of Investigation,* 831 F. Supp. 850, 854 (S.D. Fla. 1993), "little progress would result from allowing FOIA requestors to move to the head of the line by filing a lawsuit. This would do nothing to eliminate the FOIA backlog; it would merely add to the judiciary's backlog."

In an attempt to resolve their differences over premature pattern-and-practice discovery, however, the parties have engaged in an informal dialogue. Plaintiff made 10 informal requests for production of documents. *See* Section I.A., *supra*. ICE reviewed the requests and identified several that sought publicly available information. Plaintiff subsequently agreed to withdraw Request Nos. 4, 5(a), (b), and (e), 6 (in part), and 7. As ICE's counsel explained to Plaintiff's counsel, Plaintiff's remaining requests cannot be easily satisfied because of the way ICE processes FOIA requests.

More specifically, ICE does not have a formal policy or guidance reflecting ICE's treatment of FOIA requests made by a particular type of requester (e.g., non-profit, organizational, etc.). As noted earlier, ICE generally follows a first-in-first-out approach. The appropriateness of this approach is underscored in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976), where the court held that an agency is compliant with FOIA's "due diligence" requirement in applying a

"first-in/first-out" basis in the processing of incoming FOIA requests. Because ICE does not categorize FOIA requests by the type of requester, ICE cannot feasibly respond to Request Nos. 1, 2, 5, and 6.

In addition, ICE individually assesses each FOIA request to determine which ICE program offices are likely to have responsive records. Based on the breadth of a request, several program offices may be tasked to undertake a search, and several people from different program offices may be working to located and retrieve records related to one request. After all potentially responsive records are located, they are sent to the FOIA office for processing.

Illusory is the image of one person or one dedicated team of persons devoted to handling a single FOIA request from receipt to completion. As an example, for Plaintiff's request associated with Winn Correctional Facility (2021-ICFO-24506), located in Winn, Louisiana, ICE FOIA tasked ICE's Enforcement Removal Office's (ERO) Information Disclosure Unit (IDU). ERO IDU then tasked the ERO's New Orleans point of contact (POC), who then determines which appropriate units or individuals in that particular field office are likely to have responsive records. For Plaintiff's request associated with Etowan Correctional Facility (2021-ICFO-37886), located in Alabama, ICE FOIA engaged in a similar process.

For Plaintiff's request associated with the functioning of generators and water supply issues at New Orleans detention centers (2021-ICFO-32190), ICE FOIA tasked the New Orleans ERO IDU to assign the request to the POC at the ICE Health Services Unit (IHSC). This POC then determined which appropriate unites or individuals within IHSC are likely to have responsive records. Each FOIA request is addressed in a similar fashion. Consequently, when FOIA requests cover several subject matters across the entire agency, multiple ICE stakeholders are involved in the process. This explains why ICE cannot feasibly respond to Request Nos. 2 and 3, and it should not be required to do

so in any event because this information is not relevant to Plaintiff's allegations that ICE engaged in a pattern and practice specifically directed at Plaintiff.

Finally, if Plaintiff is truly seeking information about an alleged pattern and practice targeted at Plaintiff specifically (rather than simply gaining access to the front of the FOIA line), Plaintiff's Request Nos. 8, 9, and 10 are not likley to lead to the discovery of information about the handling of Plaintiff's FOIA requests and are overly burdensome and disproportionate to the needs of this case. Request No. 8 seeks "[a]ll documents concerning funding requests by DHS ICE FOIA processing since the start of the FY 2020 . . . ." Request No. 9 seeks "[a]ll documents concerning internal complaints filed by ICE employees or contract employees related to FOIA processing." And Request No. 10 seeks "[a]ll monthly reports by ICE to the FOIA Compliance and Oversight Team since May 5, 2020."[2]

In sum, for reasons explained in Section II.B., *infra*, Plaintiff should not be permitted to engage in pattern-and-practice discovery now, if at all. And even if the Court was inclined to allow discovery now (which it should not), the information Plaintiff seeks either does not exist or, if it does, would be unduly burdensome to gather in light of its lack of relevance or the needs of this case. If Plaintiff were to propound formal requests for production, ICE would object and, if necessary, move for a protective order.

## II. The Parties' Positions

### A. Plaintiff's Position:

While FOIA litigation is typically resolved on motions for summary judgment, discovery is typically necessary to resolve pattern-and-practice claims. *See Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1190 (N.D. Cal. 1998). Generally in FOIA cases, courts "distinguish between 'specific request' claims and 'pattern or practice' claims." *Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1092

---

[2] As Plaintiff's counsel is aware, moreover, data concerning the processing of FOIA requests is reported on a quarterly basis at FOIA.gov.

(9th Cir. 2019). A specific request claim "seeks production of a particular record that has allegedly been improperly" whereas a pattern or practice claim "alleges that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* (citation omitted).

The Northern District of California's reasoning in *Gilmore* is instructive here. In that case, the court ordered that because it had subject matter jurisdiction over the plaintiff's pattern or practice claim and the plaintiff established standing in that case, discovery could commence on the defendant's "policies and practices for responding to FOIA requests, and the resources allocated to ensure its compliance with the FOIA time limitations." *Gilmore*, 33 F. Supp. 2d at 1190. Likewise, that same court recently allowed discovery to proceed in an analogous FOIA pattern and practice matter against another Department of Homeland Security component. *See* Transcript of Proceedings, *Nightingale v. U.S. Citizenship & Immigr. Servs.,* NO. C 19-cv-3512 WHO, Dkt. 48 at 20-21(N.D. Cal Oct. 17, 2019).

### 1. This Court has Subject Matter Jurisdiction Over Al Otro Lado's Pattern and Practice Claim.

Courts have subject matter jurisdiction to decide claims alleging a pattern and practice of unreasonable delay in responding to FOIA requests. *See, e.g., Long v. U.S. IRS,* 693 F.2d 907, 909 (9th Cir. 1982) (citation omitted) ("In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate ... to bar future violations that are likely to occur.").

Future violations are likely to occur here. To properly discharge its duty to issue FOIA determinations pursuant to 5 U.S.C. § 552(a)(6)(B), an agency must within thirty business days maximum, "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013). A determination demands

"more than mere acknowledging receipt of the Request and stating the agency will produce any non-exempt records that it may later locate." *Elec. Priv. Info. Ctr. v. Dep'tt of Just.*, 15 F.Supp.3d 32, 40 (D.D.C. 2014).

ICE has violated FOIA's determinations statute for Al Otro Lado requests in the past and present and will continue to do so in the future. As noted, in Al Otro Lado's First Amended Complaint, this Court has already granted one injunction against ICE for failing to respond to an Al Otro Lado FOIA request. *See* Decision and Order Granting Motion for Preliminary Injunction, *Al Otro Lado v. DHS*, No. 2:20-cv-05191, Dkt. 35 (C.D. Cal. Sep. 23, 2021). ICE is also currently violating 5 U.S.C. § 552(a)(6)(B) as it has yet to issue any determination for the ten requests at issue in this case. On September 21, 2022, when Al Otro Lado filed its first amended complaint, its ten FOIA requests averaged more than 120 business days without agency determination. *See* ECF No. 46 ¶¶19, 21, 23, 25, 30, 32, 35, 38, 43, 45. ICE has started production in response to some of Al Otro Lado's requests but has not communicated the scope of the documents it intends to produce and withhold, either on a per request basis or in the aggregate.[3] Nor has ICE communicated to Al Otro Lado that it may appeal any adverse portions of any determination. Even after these two suits, ICE continued to ignore FOIA's statutory deadlines in three other Al Otro Lado requests, necessitating yet another suit before this court. *See* First Amended Complaint, *Owen v. U.S. Dep't of Homeland Sec.,* 2:22-cv-00550-DSF-AFM, Dkt. 58 (C.D. Cal. Apr. 29, 2022). Further, there appears to be no relief on the horizon as perfected complex FOIA requests, such as those that Al Otro Lado routinely files, remained pending with ICE for an average of 204 days in Fiscal Year 2021, compared to 117 days in Fiscal Year 2020.[4] As three separate suits have not

---

[3] A pattern and practice claim "can survive even an agency's production of documents." *Aguirre v. United States Nuclear Regul. Comm'n*, 11 F.4th 719, 728 (9th Cir. 2021).

[4] *Compare* DHS Privacy Office, *Fiscal Year 2021 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services* at 25, 30, Feb. 2022, https://www.dhs.gov/sites/default/files/2022-03/FY%202021%20DHS%20Annual%20FOIA%20Report.pdf *with* DHS Privacy Office, *Fiscal Year*
*(footnote cont'd on next page)*

spurred ICE into compliance with FOIA's statutory deadlines and ICE's FOIA processing times have growns, ICE would likely continue to violate 5 U.S.C. § 552 absent this Court's intervention.

### 2. Al Otro Lado Has Standing to Pursue its Pattern and Practice Claim.

To establish standing, the plaintiff must demonstrate that "(1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016). To establish that a FOIA violation is not isolated, "a plaintiff can provide evidence that he has been subjected to a FOIA violation more than once." *Id*. at 1104. A plaintiff is personally harmed by an alleged policy if their specific request was delayed past FOIA's time limits. *Id*. at 1106; *see also Gilmore* 33 F. Supp. 2d at 1189 (The [agency's] "failure to process [Plaintiff's] FOIA request in a timely manner was itself an injury—an invasion of a legally protected interest."); *Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170, 1174 (N.D. Cal. 2015) ("[F]ailing to respond to a FOIA request is as much a withholding as intentionally locking away responsive information"). Finally, a plaintiff must show that a probability that agency will delay lawful access to information in the future. *Hajro,* 811 F.3d at 1103. In general, a "plaintiff's allegations that he regularly files FOIA requests with a certain agency but that agency consistently fails to respond to those requests in a timely fashion would. . . support a pattern-or-practice claim." *Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Centers for Disease Control & Prevention*, 929 F.3d 1079, 1086 (9th Cir. 2019).

ICE has now failed to issue timely determinations for at least fifteen of Al Otro Lado's FOIA requests. Those delays have negatively affected Al Otro Lado's organizational mission of disseminating timely information "to the media, the general public, and human rights monitoring bodies. . . about. . .conditions. . . in immigration

---

*2020 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services* at 25, 30, Mar. 2022, https://www.dhs.gov/sites/default/files/publications/dhs_fy2020_foia_report_cleared.pdf.

9

detention." ECF No. 46 ¶8. Given ICE's repeated failures to adhere to FOIA's timelines in response to Al Otro Lado requests and its general practice of failing to adhere to these timelines in complex requests, these violations are likely to recur in the future. As such, Al Otro Lado has standing to pursue its pattern and practice claim in this case.

### 3. The Limited Discovery Requested By Al Otro Lado is Necessary to Resolve Al Otro Lado's Pattern or Practice Claim.

In general, a party may obtain discovery

> relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b). In deciding FOIA pattern or practice claims, courts generally consider agency intent, egregiousness of agency delays, and whether such delays will likely recur as relevant factors. *See e.g. Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army*, 58 F. Supp. 3d 1050, 1055 (C.D. Cal. 2014); *Cmty. Ass'n for Restoration of the Env't, Inc. v. U.S. E.P.A.*, 36 F. Supp. 3d 1039, 1049 (E.D. Wash. 2014).

Here, Al Otro Lado requested information regarding the processing of its FOIA requests by ICE, ICE policies concerning requests similar to those filed by Al Otro Lado, and ICE's efforts to address backlogs and wait times. ICE, rather than Al Otro Lado, is the custodian of those records, and none of the outstanding requests are publicly available. Such information is critical in aiding the Court to determine whether ICE is acting in bad faith to delay issuing determinations for Al Otro Lado's requests and what steps ICE has taken, if any, to comply with FOIA's timelines in the future. As such, this Court should allow Al Otro Lado to take limited discovery in this case.

### B. Defendant's Position:

Plaintiff acknowledges that "FOIA litigation is typically resolved on motions for summary judgment" and offers no case law to support its premature request for pattern-and-practice discovery. Indeed, in *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, cited by Plaintiff, the district court allowed discovery to proceed after the parties filed cross-motions for summary judgment and Plaintiff filed a declaration attesting to the need to take discovery on the pattern-and-practice claim. *Id.* at 1189-90.

Plaintiff's citation to a transcript in *Nightingale v. U.S. Citizenship & Immigr. Servs.*, NO. C 19-cv-3512 WHO indicates that the district court was inclined to allow limited discovery. But the published decision does not explain if discovery was permitted prior to summary judgment proceedings and, if so, why. *See Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193 (N.D.Cal. 2020). And Plaintiff's reliance on *Nightingale* as a pre-emptive basis to grant discovery on a pattern-and-practice claim is misplaced. Unlike *Nightingale,* Plaintiff is not representing a class action; nor are the records sought uniform in nature, such as A-files, which are generally maintained in one system. Unlike *Nightingale,* moreover, Plaintiff has not established specific facts that show ICE is engaged in a pattern and practice specifically aimed at Plaintiff. Additionally, the court in *Nightingale* highlighted the importance of obtaining A-files for individuals in immigration removal proceedings, noting that FOIA "[I]s the only realistic mechanism through which noncitizens can obtain A-files." *Id.* at 1205. This quality of importance in terms of the records requested is simply lacking in this case.

In addition, Plaintiff's reliance on *Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army*, 58 F. Supp. 3d 1050 is misplaced. There, the district court found "Plaintiff has not alleged facts showing that the Army engages in a pattern and practice of delay." *Id.* at 1055. And Plaintiff's citation to *Cmty. Ass'n for Restoration of the Env't,, Inc. v. U.S. E.P.A.*, 36 F. Supp. 3d 1039 is not helpful because

11

the decision does not discuss the propriety of pattern-and-practice discovery at all—let alone prior to summary judgment proceedings.

It may seem counterintuitive to permit discovery, it at all, in a FOIA case only after a federal agency has filed a motion for summary judgment. But it makes more sense considering how a FOIA request evolves into litigation. At the crux of any FOIA case is the claim that the federal agency has not adequately responded to a FOIA request. And at the conclusion of any litigated FOIA case, the federal agency must satisfy its burden of showing that it has adequately responded to the FOIA request and to explain the reasonableness of its process for doing so. *See, e.g., Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (agency must show that it made "a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested") (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The federal agency makes this showing through one or more declarations often referred to as a *Vaughn* Index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), concurrently with a motion for summary judgment.

In their Joint Rule 26(f) Report (Dkt. 50 at 15), the parties agreed that a FOIA case should not be treated the same as other civil cases for purposes of discovery:

> The parties maintain that because this is a FOIA action, the usual discovery process does not apply. FOIA cases are different from other civil matters subject to the discovery provisions of the Federal Rules of Civil Procedure because the government bears the burden to justify non-disclosure of documents. *See* 5 U.S.C. § 552(a)(4)(B); *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987). Because the government bears the burden of justifying non-disclosure in a FOIA case, discovery is not essential. [¶] Moreover, discovery is greatly restricted in FOIA actions. *See Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), aff'd, 349 F.3d 657 (D.C. Cir. 2003). It is generally limited to the scope of an agency's

search, its indexing and classification procedures, and similar factual matters. *Id*. Permissible discovery concerning such factual issues generally takes place, if at all, after the government moves for summary judgment and submits supporting affidavits and memorandum of law. *See*, *e.g.*, *Lane*, 523 F.3d at 1134-35 (holding that district court's "delay of discovery" with respect to plaintiffs FOIA claim until after summary judgment "was certainly within its discretion).

Plaintiff seeks to create an exception for a pattern-and-practice claim but has failed to identify a single decision to justify a carve-out.[5]

Plaintiff also has not offered a legitimate reason why it needs discovery on its pattern-and-practice claim now. It argues that this "information is critical in aiding the Court to determine whether ICE is acting in bad faith to delay issuing determinations for Al Otro Lado's requests and what steps ICE has taken, if any, to comply with FOIA's timeliness in the future." But such information regarding the search for responsive records and FOIA processing of each of Plaintiff's claims will be provided in ICE's declarations in support of its summary judgment motion. If that information proves insufficient, Plaintiff may then request discovery under Fed. R. Civ. P. 56(d), as has been the process in other FOIA cases.

Finally, Plaintiff gains nothing by pursuing pattern-and-practice discovery now, which would only serve to distract ICE from achieving the primary objective in this case—i.e., to respond to Plaintiff's FOIA requests. Plaintiff's prayer for relief demonstrates that its pattern-and-practice claim adds no value because the requested relief is the same with or without that claim. *Compare* Dkt. 1 at ¶ 46(2) (original complaint without pattern-and-practice claim) *with* Dkt. 46 at 29, ¶ 2 (first amended complaint with pattern-and-practice claim). If Plaintiff's goal is to obtain expedited

---

[5] Plaintiff devotes several pages to subject matter jurisdiction and standing. As in *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, these issues can be resolved, if necessary, on summary judgment.

13

status for all its future FOIA requests, that would be inappropriate. *See Animal Legal Def. Fund v. United States Dep't of Agric.,* 933 F.3d 1088, 1095 ("[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.") (quotations and citations omitted).

In sum, the Court should allow this case to proceed in the same manner as other FOIA cases—i.e., allow ICE to fulfill Plaintiff's FOIA requests, then allow ICE to file a motion for summary judgment and *Vaughn* Index, and then (if necessary) allow limited discovery under Rule 56(d). Permitting pattern-and-practice discovery adds no value and would be a waste of the Court's and the parties' resources.

Dated: June 30, 2022

    /s/ Jeremy Jong*
Jeremy Jong (admitted pro hac vice)
Karlyn Kurichety (State Bar No. 313265)
Al Otro Lado, Inc.
P.O. Box 907
Maywood, CA 90270
Telephone: (323) 205-6420
Facsimile: (323) 430-8793
jeremy@alotrolado.org
karlyn@alotrolado.org

Attorneys for Plaintiff Al Otro Lado

14

| | | |
|---|---|---|
| 1 | Dated: June 30, 2022 | TRACY L. WILKISON |
| 2 | | United States Attorney |
| | | DAVID M. HARRIS |
| 3 | | Assistant United States Attorney |
| 4 | | Chief, Civil Division |
| | | JOANNE S. OSINOFF |
| 5 | | Assistant United States Attorney |
| 6 | | Chief, General Civil Section |
| 7 | |  */s/ Paul B. La Scala* |
| | | PAUL B. LA SCALA |
| 8 | | Assistant United States Attorney |

Attorneys for Defendant
U.S. Immigration and Customs Enforcement

*Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.