```
                    UNITED STATES OF AMERICA
                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION

                              - - -
                  HONORABLE CHRISTINA A. SNYDER
             UNITED STATES DISTRICT JUDGE PRESIDING
                              - - -


    AL OTRO LADO,                     )
                                      )
              PLAINTIFF,               )
                                      )
    VS.                                )   CASE NO.:
                                      )   CV 21-3462-CAS
    IMMIGRATION CUSTOMS AND            )
    ENFORCEMENT,                       )
                                      )
              DEFENDANT.               )
    _____)




              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                 MONDAY, SEPTEMBER 11, 2023

                    LOS ANGELES, CALIFORNIA








                LAURA MILLER ELIAS, CSR 10019
              FEDERAL OFFICIAL COURT REPORTER
               350 WEST 1ST STREET, ROOM 4455
                LOS ANGELES, CALIFORNIA 90012
                     PH:  (213) 894-0374


                 UNITED STATES DISTRICT COURT
```

```
 1
 2    APPEARANCES OF COUNSEL:
 3
 4    ON BEHALF OF PLAINTIFF:
 5
 6              AL OTRO LADO
 7              BY:  JEREMY JONG, ESQ.
 8              3511 BANKS STREET
 9              NEW ORLEANS, LA 70119
10
11
12
13    ON BEHALF OF DEFENDANT:
14
15              UNITED STATES ATTORNEY'S OFFICE
16              BY:  PAUL LA SCALA
17              ASSISTANT UNITED STATES ATTORNEY
18              300 NORTH LOS ANGELES STREET
19              SUITE 7516
20              LOS ANGELES, CA 90012
21
22
23
24
25
```

```
 1
 2                              INDEX
 3
 4
 5    PROCEEDINGS                                        PAGE
 6
 7    STATUS CONFERENCE                                    4
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 11, 2023
 2                          11:51 A.M.
 3                            - - -
 4             THE CLERK:  Calling Calendar Item No. 3.
 5             Case No. CV 21-3462.
 6             Al Otro Lado, Incorporated versus Immigration and
 7   Customs Enforcement, et al.
 8             Counsel, please state your appearances.
 9             MR. JONG:  Jeremy Jong on behalf of plaintiffs.
10             THE COURT:  Good morning, Mr. Jong.
11             MR. JONG:  Good morning, Your Honor.
12             MR. LA SCALA:  Good morning, Your Honor.  Paul
13   LaScala Assistant United States Attorney on behalf of United
14   States Customs Enforcement.
15             THE COURT:  Sorry for the delay.
16             I have your joint report.  If I were going to
17   summarize it, you seem to have agreed on most things except
18   you can't reach an agreement on Count 2 which is the
19   plaintiff's claim that ICE has a pattern and practice of
20   failing to issue timely determinations.  Uh, the plaintiff
21   requests that the Court order discovery or limited discovery
22   on that issue.  I assume the government opposes that.
23             MR. LA SCALA:  That's correct, Your Honor.
24             THE COURT:  So Mr. Jong, if I did order that
25   discovery, what do you think it would look like?
```

1          MR. JONG:  Yes, Your Honor.
2               So the issues that we would, uh, or that the Court
3     would need to decide in this pattern and practice claim, uh,
4     would be primarily the likelihood of future delays.  And so
5     courts have typically looked at a couple of things.  They've
6     looked at staffing levels.  They've looked at, um,
7     Congressional budget requests and they've looked kind of what
8     technological, uh, improvements that the agencies have been
9     using or -- or want to use in the future in order to, uh, in
10    order to actually decrease its backlogs.
11              And so what we would be asking for is limited
12    discovery, a few requests for production and interrogatories
13    about these issues, potentially a 30 B(6) deposition about
14    what efforts ICE is making in decreasing its backlogs.
15              THE COURT:  Okay.  Once you have that information
16    Mr. Jong, what would you propose I do with it?  I mean I
17    think I have to be careful about overstepping my role as an
18    Article III judge because last I checked, I'm not a member of
19    Congress and I' not directly in charge of Immigration.  So
20    there's some difference between adjudicating a single case
21    versus telling ICE how to reorganize itself.  So I'm at a bit
22    of a loss as to where we're going here.
23              MR. JONG:  That's correct, Your Honor.  I would,
24    uh, I would implore the Court to look at the Nightingale case
25    from Northern District and also the Gilmore case from the

1    Northern District.

2              THE COURT: Yeah, I've seen at least one of them.
3    Can you give me the cites if you have them handy?

4              MR. JONG: Yes, Your Honor. So Nightingale is
5    507 FSupp.3d 1193 and Gilmore is 33 FSupp.2d 1184.

6              THE COURT: Okay, thanks.

7              So, um, I realize that you believe that I have the
8    ability to make that ruling. I'll read the cases obviously
9    because I recognize that you are addressing what is an
10   important concern, how we adjudicate people and there's a
11   long line. Uh, and it's made longer because of all the other
12   lines that are created currently. So I realize it's an
13   important issue to your clients, but as I say, I think there
14   are some limits to what I can do.

15             Um, let me just turn to the government for a
16   moment. Mr. LaScala how burdensome would it be if you
17   provided a 30 B(6) designee for deposition and you provided
18   shall I say some limited number of documents say not to
19   exceed 50 in number or something like?

20             MR. LA SCALA: Well, Your Honor, it would depend.
21   I mean if it's a 30 B(6) deposition with 20 categories. Here
22   in this case the numbers continue to change originally, we
23   had four FOIA requests at issue, then it became 10 and 10
24   with 60 subparts. So it can spiral out control. Just a 30
25   B(6) deposition can be a little misleading depending on the

1    number of the categories.

2            Then as Your Honor mentioned, there is already a

3    long line.  We don't have finite resources on this.  And so

4    every time we take away individuals to have pattern and

5    practice discovery, it takes away time to process FOIA

6    requests which we've continued to do in this case and will

7    continue to do.  So the thought process, Your Honor, is that

8    it actually hasn't changed since our June 30, 2022 joint

9    report in which we outlined our positions.

10           I haven't heard anything different from Mr. Jong.

11   There isn't much different, uh, from my side.  In fact what

12   Your Honor said tracks very well with our citation to the

13   Animal Legal Defense Fund case at 933 F3d 1088 in which the

14   9th Circuit said given the finite resources generally

15   available for fulfilling FOIA requests, unduly generous use

16   of the expedited processing procedure would unfairly

17   disadvantage other requesters who do not qualify for its

18   treatment.

19           THE COURT:  Okay.  Well, let me ask you maybe the

20   more pointed question.  In your view what do I do with this

21   case?  Do I say you folks have agreed on everything you can

22   agree on and that's it and dismiss it or what?

23           MR. LA SCALA:  No, Your Honor.  I think what would

24   happen is as we put in the joint report, there are about

25   500 pages of exemptions Mr. Jong is going to provide at some

1    point.  We didn't actually settle on a time.  He is going to
2    provide his information about that so we can see where we can
3    resolve that.  Whatever is left we would do a Vaughn Index.
4    We would do a motion for summary judgment.
5           We would get it resolved, and then after that as we
6    indicated in the June 30, 2022 report, then the Court can
7    take another look and see if discovery is really indicated.
8    This case has been going on for well over two years.  The
9    pattern and practice claim has really not been front and
10   center as far as we're concerned because we've been focused
11   on trying to just fulfill the FOIA requests that are at issue
12   in this case.
13          THE COURT:  Mr. Jong, what's wrong with that
14   resolution?
15          MR. JONG:  Your Honor, I think, uh, I think
16   Mr. LaScala has it 90 percent correct.  I mean, um, yeah, I
17   think we are trying to resolve, uh, adequacy of search
18   issues.  We're trying to resolve exemption issues.  We do
19   think, however, that there would be meaningful harm to us if
20   the, uh, if the government were not, uh, if we had to wait
21   until the end of productions, uh, to adjudicate this pattern
22   and practice issue.
23          I mean, we continuously file FOIA requests and
24   they're continuously not answered by statutory deadlines.
25          THE COURT:  Well, I get that.  The point is the

1   case in controversy that's immediately before me are the
2   current FOIA requests and getting to the point where we have
3   a Vaughn Index to decide what we do about those people.  Um,
4   I understand that part of your claim is that there's a
5   pattern and practice, uh, problem to be delayed, but how does
6   that fit into what's really gonna be immediately adjudicated
7   by me?
8           MR. JONG:  Yes, Your Honor.
9           We believe that the Court can do both at the same
10  time.  The Court does not need to have, uh, a very kind of
11  intense supervision of discovery.  I think hopefully in the
12  interest of getting this case done as fast as possible, I
13  think the government can produce, uh, its remaining
14  productions and produce its Vaughn Index.
15          Uh, and -- and we can try to resolve the pattern
16  and practice claim so that we can have summary judgment
17  motions for all of these at the same time instead of
18  bifurcating this case and making it last who knows how long.
19          MR. LA SCALA:  Your Honor, may I respond?
20          THE COURT:  Absolutely.
21          MR. LA SCALA:  I wanted to try to answer
22  Your Honor's question about the case in controversy that's in
23  front of us.  And the first amended complaint which is Docket
24  43 is the operative complaint.  Count 2 is a pattern and
25  practice claim.  It's made up of three paragraphs, and the

1   first paragraph of that count which is Paragraph 51 page 26
2   expressly says that it's referring to the ten FOIA requests
3   at issue.  So that is the case in controversy.  To ask for
4   discovery beyond that would be beyond the pleadings in this
5   case.
6           THE COURT:  I think that's a fair point.  What do
7   you have to say in response, Mr. Jong?
8           MR. JONG:  Your Honor, we pointed to the ten
9   requests in this case as, um, as evidence; right?  As
10  evidence that there is a pattern and practice.  These are not
11  the only FOIA cases that we --
12          THE COURT:  I know that.
13          MR. JONG:  Yes, Your Honor.
14          THE COURT:  But what he's saying is if I look at
15  the pleadings, the four corners of your pleadings, you're
16  saying that the pattern and practice of delay has prejudiced
17  the claimants in this case.  Why don't we decide that first
18  before we take on the entire immigration system?
19          MR. JONG:  Your Honor, just to be clear, we're not
20  trying to take on the entire immigration system.  All we're
21  trying to do is get an injunction so that -- so that ICE has,
22  uh, to abide by statutory deadlines in our requests.  It's
23  very limited in scope what we're asking for.
24          THE COURT:  That's not so limited where I come
25  from, but it's all in the eye of the beholder.  Look, if

1    we're gonna issue an injunction, I have a custom and habit of
2    trying to issue injunctions that have teeth and have a basis.
3    The injunction you're talking about is going to require lots
4    of discovery, lots of briefing, uh, because the issue of an
5    injunction against ICE telling them how to process things or
6    prohibiting them from engaging in certain practices is no
7    small feat.
8         So I understand where you're going, but I think the
9    thing to do is to adjudicate the claimants in this case and
10   indeed, if you think there is a custom and practice as
11   applied them and you need discovery as to them, fine.  But I
12   don't want to take on the entire ICE system right now given
13   the litigation before me.
14        So why don't we proceed, uh, and obviously, if you
15   need to develop pattern and practice, uh, evidence as it
16   pertains to your plaintiffs in this case to show a custom and
17   practice of delay, let me know with very limited discovery
18   requests hopefully.
19        MR. JONG:  Yes, Your Honor.  Just to be clear, uh,
20   we are -- we're not asking for an injunction against ICE to
21   prohibit them from violating FOIA's time statutes, you know,
22   to the entire world to every requestor.  All we're asking for
23   is an injunction as to us, as to both of our claims, uh, the
24   ten claims that are -- that are -- that make the basis for
25   this lawsuit and for our currently pending and future claims

1	as well.

2	THE COURT: Okay, that's fair.

3	Mr. LaScala.

4	MR. LA SCALA: Yes, Your Honor.

5	So essentially he wants, he meaning Al Otro Lado,

6	wants a free pass on every FOIA request. And as Mr. Jong

7	mentioned, they continually, you know, bring in FOIA

8	requests. So to do that would be to essentially, uh, flip

9	the system as much as it is already on its head even further

10	on its head.

11	THE COURT: You want to explain that to me he wants

12	a pass on every FOIA request. If we're talking to the FOIA

13	requests as pertain to the plaintiffs in this case, how does

14	that implicate every FOIA request in the world?

15	MR. LA SCALA: No, I'm sorry. If I misspoke, I

16	apologize. Not every FOIA request in the world, but the

17	plaintiff here is Al Otro Lado. It's not the individuals.

18	So if Your Honor's actually referring to the individuals that

19	are at issue in the FOIA requests, then that makes more sense

20	to me. If you're referring to Al Otro Lado, they are a

21	vociferous requester and it would -- it would really --

22	THE COURT: No, I'm talking about the claimants in

23	this case.

24	MR. LA SCALA: Okay. Then, Your Honor, no, I think

25	Your Honor is correct. I don't think that that's outside of

1    the realm or the possible scope of discovery.
2            THE COURT:  And -- and if one of the claimants in
3    this case has some kind of pattern and practice claim which
4    is apparently the case, I assume that there may or may not be
5    discovery that demonstrates that.
6            MR. LA SCALA:  That I don't know, Your Honor.  When
7    I think about the claimants, I mean, we have individuals who
8    are in ICE custody so it's hard for me to appreciate what
9    might actually be there and what might be available.  Of
10   course as Your Honor knows, when there are claims made that
11   an individual should not have been in custody or was not
12   treated properly in custody, there are OPR investigations,
13   things like that that aren't necessarily discoverable
14   especially if there's an investigation pending so it's hard
15   for me to answer that question, Your Honor.  I don't mean to
16   be vague.
17           THE COURT:  I understand that if an investigation
18   is pending, you probably can't produce anything.  Um, all I'm
19   trying to say is that -- and I don't think it's -- but if
20   there are discoverable records as to any individual that, you
21   know, we don't want to process him for reasons X, Y and Z,
22   that seems to me the sort of thing that might be relevant in
23   this case, uh, but I don't know if it exists.  It may not it.
24   It probably doesn't.  But I think that there could be
25   discovery specific to the claimants in this case that could

1   somehow or another reflect on the claim that there's a custom
2   and practice just theoretically.  I'm not telling you I think
3   it exists.  That is the scope I'm talking about.  I'm not
4   talking about some policy at a regional level or some policy
5   at a national level.
6           MR. LA SCALA:  Understood, Your Honor.
7           THE COURT:  Per se.
8           MR. LA SCALA:  And I understand.  That scope is
9   much more palatable.  I also do not know if those such of
10  things exist, but I also think to make this as orderly as
11  possible getting through the actual FOIA requests that are in
12  front of Your Honor, um, getting the adequacy of search
13  issues and the exemptions ironed out, um, I think that would
14  actually I think resolve most of the issues with regard to
15  any alleged pattern and practice as to the individuals who
16  are the subjects of those requests.
17          THE COURT:  Mr. Jong, why don't we start there.
18  I'm not saying that's the end of it, but at least it's a
19  rationale way of starting and we may get a lot of answers if
20  we litigate the case in that fashion.
21          MR. JONG:  Your Honor, if I could just make a short
22  response to Mr. LaScala.  It's hard for plaintiffs to see
23  here, uh, how resolving the adequacy of search issues,
24  resolving the exemption issues how those would bring us any
25  further in resolving this pattern and practice issue.  What

1    courts used to consider whether there is a pattern and
2    practice, as I stated earlier is staffing, what the agency is
3    doing to resolve backlogs, and, uh, and what they're
4    requesting in Congressional appropriations.
5            And none of those things are gonna come out in the
6    Vaughn Indices in declarations about adequacy of search.  So
7    our position is, of course, the Court can decide to order
8    things in whatever way it wants to, however, uh, I think once
9    we resolve the adequacy of search and exemption issues, we're
10   still going to be left with the pattern and practice issue.
11   It's not gonna get it any closer.
12           THE COURT:  At least by then we'll have a shall I
13   say a more accurate sense of where we are on pattern and
14   practice.  But, you know, as a policy matter, I don't
15   disagree with anything you've said.  It's just how is a court
16   going to say you have to fund more, uh, you have to decide by
17   such-and-such a time.
18           Those are significant issues regarding the Court's
19   jurisdiction.  And I would prefer to resolve the issues that
20   are before that I know I can adjudicate first.  And I'm not
21   suggesting you should give up your additional claims, keep
22   them, and we'll decide when we're done whether in fact they
23   are justiciable by this Court.
24           MR. JONG:  Understood, Your Honor.
25           THE COURT:  Okay, everybody.  Thank you so much.

1     MR. LA SCALA:  Your Honor, can I just get clarity
2  on the discovery permitted as to those claimants at the
3  moment?
4     THE COURT:  Yes.
5     MR. LA SCALA:  Are they limited to interrogatories
6  and requests for production?
7     THE COURT:  Uh, in the first instance, yes.  I
8  don't know the situation well enough.  If there is some ICE
9  administrator who's in charge of dealing with the FOIA
10 requests by these individuals or multiple ones, perhaps their
11 depositions could be taken, but I think the answer is let's
12 start with written discovery.  If the plaintiff wants to
13 proceed with depositions, come back to me not to the
14 magistrate judge and we'll decide.
15    MR. LA SCALA:  Thank you, Your Honor, for the
16 clarification.  I really appreciate it.
17    THE COURT:  Okay, Mr. Jong?
18    MR. JONG:  Thank you, Your Honor.
19    THE COURT:  Thank you, everybody.
20    (Proceedings were conclude at 12:12 p.m.)
21
22
23
24
25

1

2                    <u>CERTIFICATE OF REPORTER</u>

3

4    COUNTY OF LOS ANGELES      )

5                               )  SS.

6    STATE OF CALIFORNIA        )

7

8    I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

9    STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

15   OF MY STENOGRAPHIC NOTES.

16

17

18   DATE:  <u>NOVEMBER 4, 2023</u>

19

20        <u>/s/   LAURA MILLER ELIAS</u>

21   LAURA MILLER ELIAS, CSR 10019

22   FEDERAL OFFICIAL COURT REPORTER

23

24

25